[No. 35194-0-I.   Division One.   April 15, 1996.]

*In the Matter of the Bankruptcy Estate of* Ross *and* CASSANDRA HANSEN.

DANIEL E. FORSCH, *as Trustee*, ET AL., *Appellants*, v. THE CITY OF KENT, *Respondent.*

*W.J. Ferguson* and *Ferguson & Burdell*, for appellants.

*Stewart A. Estes* and *Keating, Bucklin & McCormack, P.S.*, for respondent.

KENNEDY, A.C.J. — The Bankruptcy Estate of Ross and Cassandra Hansen (Bankruptcy Estate) and Ross Hansen (plaintiffs) appeal the summary judgment dismissing their claims against the City of Kent (City) for breach of civil

rights under 42 U.S.C. § 1983, contending that the Honorable James McCutcheon erred by ruling that the City was entitled to qualified immunity. The City contends that Judge McCutcheon did not dismiss the civil rights claim on grounds of qualified immunity; rather he dismissed the claim because plaintiffs failed to introduce evidence that a "final policy maker" caused the alleged civil rights violation, and because the chain of causation was broken when the Honorable Susan Agid issued a seizure warrant based on a determination of probable cause. The plaintiffs contend that if this is so, Judge McCutcheon nevertheless erred in dismissing their claims. The City cross-appeals, contending that new evidence considered by Judge McCutcheon following a motion for reconsideration is not properly part of the record for this appeal, challenging the earlier summary judgment ruling of the Honorable Anne Ellington that plaintiffs' claims were not barred by res judicata, and contending further that Judge Ellington interlineated superfluous findings of fact and conclusions of law which should be disregarded on appeal.

We conclude that the evidence considered by Judge McCutcheon following the motion for reconsideration is properly in the record, reverse Judge McCutcheon's summary judgment order, affirm Judge Ellington's summary judgment order, and remand for such proceedings as shall be consistent with the opinion of this court.

## FACTS

In June 1989, the Kent Police Department conducted an investigation into a major marijuana growing operation run by one Raymond Hendrickson. After arresting Hendrickson, police discovered documents and other evidence which indicated that Hendrickson had "laundered" profits from the sale of marijuana through two businesses owned and operated by Ross Hansen: Auburn Precious Metals and Northwest Territorial Mint. After questioning Hansen and some of his employees, and after consulting with

Chief Frederiksen of the Kent Police Department and with a deputy prosecuting attorney for King County, Detective Miller of the Kent Police Department appeared before then–King County Superior Court Judge Susan Agid with a 13-page affidavit requesting seven search and seizure warrants. The proposed warrants authorized searches of Hansen's home, the two businesses, various bank accounts and vehicles, and ordered police to seize Ross Hansen, all documents of ownership, and "the business assets of AUBURN PRECIOUS METALS, NORTHWEST TERRITORIAL MINT, and HANSEN'S personal assets, including any and all personal and business bank accounts, as permitted under RCW 69.50.505(b) as amended by Chapter 271 of 1989 Session Laws of the State of Washington." Clerk's Papers at 137, et seq.

Judge Agid took the affidavit and proposed warrants home to study them overnight. After determining that the affidavit contained probable cause to believe that Hansen had committed violations of Washington's Uniform Controlled Substances Act and the conspiracy and criminal profiteering statutes, and that evidence of these crimes would be found in the places the police sought to search, Judge Agid issued the seven warrants on July 19, 1989. The warrants were executed on July 21, 1989. Ross Hansen was arrested for criminal profiteering, conspiracy, and violation of the Uniform Controlled Substances Act. Police occupied his business premises 24 hours a day, to the exclusion of the owners, from July 21 to August 17, 1989, at which time the Honorable Peter Steere ordered the premises restored to Hansen. In the meantime, police removed an entire tractor-trailer of inventory from Hansen's business premises to their own storage facilities, including precious metals and other valuable personal property. Hansen's legitimate business customers were allowed access one-at-a-time, to recover property which they could establish belonged to them and not to the businesses.

On August 4, 1989, the City commenced an administrative law proceeding under RCW 69.50.505 to forfeit the

personal property seized on July 21. The Notice of Seizure and Intended Forfeiture was signed by Chief Frederiksen.

On that same day, the City, represented by its City Attorney, instituted an in rem forfeiture proceeding in King County Superior Court, under RCW 69.50.505, seeking to forfeit Hansen's real property seized on July 21. On August 11, Judge Steere, determining that Judge Agid's seizure warrants were supported by probable cause, executed an in rem seizure warrant for the real property. However, on August 17, he revoked his own in rem seizure warrant, after concluding that the 1989 amendments to RCW 69.50.505 allowing forfeiture of real property were not yet effective in April 1989—the last date the City could show any financial transactions between Hansen and the marijuana grower Hendrickson. Accordingly, Judge Steere determined that the City could not validly seize and forfeit Hansen's real property under RCW 69.50.505.

As permitted by RCW 69.50.505, Hansen moved to transfer the administrative personalty forfeiture proceeding to Superior Court and to consolidate it with the in rem real property forfeiture proceeding. Upon transfer, the Honorable James Bates initially ruled, on August 23, 1989, that Judge Agid's seizure warrants were supported by probable cause and denied Hansen's motion for return of the personal property. However, on reconsideration, on September 13, 1989, Judge Bates ruled that Judge Agid's seizure warrants were not supported by probable cause and ordered all personal and business assets returned to Hansen.

The City took no further action on its two forfeiture proceedings; no appeal was filed with respect to the rulings of Judges Steere and Bates. In December 1990, the presiding judge of the King County Superior Court dismissed the City's forfeiture proceedings without prejudice, for failure of the parties to file a joint status report.

Hansen claims that some of the personal property was never returned, that some items were returned damaged, and that he was never able to recover from the loss of

business occasioned by the July 21 seizures and having his businesses shut down for two and one-half months. In December 1989, as proprietor of Auburn Precious Metals and Northwest Territorial Mint, Hansen declared bankruptcy.

No state criminal charges were ever filed against Hansen. However, the United States Attorney brought federal charges, and Hansen eventually pleaded guilty to two counts of failure to file currency transaction reports (failure to report to the Internal Revenue Service two cash transactions with marijuana grower Hendrickson exceeding $10,000 each), two counts of structuring transactions to avoid the IRS reporting requirements (breaking down transactions in excess of $10,000 into smaller transactions), and one count of being a felon in possession of a firearm seized during the execution of the search and seizure warrants (Hansen had previously been convicted of selling an illegal firearm to an undercover federal agent and was not allowed to possess firearms). Hansen served his time for these federal offenses and was released in the spring of 1994.

Meanwhile, in July 1992, Ross Hansen and the Bankruptcy Estate brought the instant lawsuit, seeking, inter alia, damages under 42 U.S.C. § 1983 for alleged violation of Hansen's constitutional rights to be free from unlawful arrest, unlawful imprisonment, and unlawful search and seizure.

In August 1993, the City moved for summary judgment, contending that Hansen was precluded under res judicata from raising these civil rights claims in the current lawsuit, in that he had failed to raise them in the 1989 forfeiture proceedings. Plaintiffs moved for summary judgment contending that Judge Bates's ruling in the forfeiture proceeding, that Judge Agid did not have probable cause to issue the search and seizure warrants, was entitled to collateral estoppel effect in the current lawsuit, and that plaintiffs were, therefore, entitled to judgment as a matter of law and that the City was liable under 42

U.S.C. § 1983. Then–Superior Court Judge Ellington ruled that res judicata did not bar the plaintiffs' civil rights claims, that Judge Bates's ruling in the forfeiture proceedings that Judge Agid did not have probable cause to issue the search and seizure warrants was entitled to collateral estoppel effect in the civil rights law suit, but that genuine issues of material fact nevertheless precluded summary judgment that the City was liable as a matter of law.

The City had presented a proposed order granting its motion for summary judgment. Judge Ellington utilized that order, crossing out the language which would have granted summary judgment to the City and penning in her own rulings, instead.

The plaintiffs do not appeal Judge Ellington's ruling denying their motion for summary judgment on the issue of liability. The City cross-appeals the substantive ruling that plaintiffs' civil rights claims are not barred under res judicata, but does not appeal the substantive ruling that Judge Bates's order in the forfeiture proceedings is entitled to collateral estoppel effect in the current law suit. Inexplicably, the City contends that Judge Ellington made findings of fact in her ruling denying the plaintiffs' motion for summary judgment as to liability, apparently because Judge Ellington wrote that she "found" Judge Bates's ruling that the City lacked probable cause for the seizure of Hansen's property to be entitled to collateral estoppel effect. Clerk's Papers at 416-17.[1]

About a year later, in June 1994, the City moved for summary judgment dismissing plaintiffs' civil rights

---

[1]We dispose of this issue summarily. Judge Ellington did not make a "finding of fact." She instead issued a legal ruling that, although Judge Bates's ruling as to lack of probable cause was entitled to collateral estoppel effect, there still remained genuine issues of material fact regarding the City's liability which precluded summary judgment as to liability. To the extent that the City may have attempted to finesse the necessity of briefing the substantive collateral estoppel issue, hoping that this court would simply strike the ruling as a superfluous "finding," the City has failed. Judge Ellington's ruling upholding Judge Bates's ruling that Judge Agid lacked probable cause to issue the warrants remains in full force and effect.

claims, arguing that Judge Agid's seizure warrants broke the chain of causation. After plaintiffs responded to this motion, the City filed a reply which included a new declaration from Chief Frederiksen, stating that he would not have authorized Detective Miller to apply for the seizure warrants if he had believed certain factual allegations to be true, but denying that the factual allegations were in fact true. The declaration implied that the Chief in fact authorized Detective Miller to apply for the warrants, a proposition which the City long had steadfastly denied.

At the hearing before Judge McCutcheon, plaintiffs argued that a continuance should be granted, so that plaintiffs could respond to the Chief's new declaration. Judge McCutcheon orally ruled that plaintiffs could respond in a motion for reconsideration, instead.

Judge McCutcheon, reasoning that Judge Agid's independent determination of probable cause which determination Judges Steere and Bates initially agreed with and only later determined to be faulty, broke the chain of causation, entitling the City to summary judgment dismissing the civil rights claims.

The plaintiffs then moved for reconsideration and filed excerpts from Chief Frederiksen's deposition which had been taken a month earlier, which tended to clarify and explain Chief Frederiksen's role in authorizing application for the seizure warrants and his role, as well as that of the City Attorney and City Administrator, in deciding to pursue seizure and forfeiture of Hansen's personal and business assets. Then the City filed additional excerpts from the Chief's deposition in order to further clarify and explain the Chief's testimony.

After reviewing this deposition testimony, we conclude that a rational trier of fact could reasonably find that Chief Frederiksen, the City Attorney and the City Administrator discussed seizing and forfeiting Hansen's assets before the seizure warrants were issued and that Chief Frederiksen, with the prior approval of the City Attorney and City Administrator, personally authorized the final

decision to proceed with the application for the warrants. Chief Frederiksen explained that although he had full authority for the day to day operations of the police department, it was not uncommon, in cases of the magnitude of this one, for him to obtain prior approval of the City Attorney and City Administrator. Chief Frederiksen testified that he believed in good faith that probable cause justified the decision to proceed with the seizures and subsequent forfeiture proceedings.

Judge McCutcheon duly considered the new evidence, whereupon plaintiffs withdrew their earlier objection to the court's consideration of Chief Frederiksen's declaration. Judge McCutcheon then denied the motion for reconsideration, reasoning that Chief Frederiksen's good faith entitled the City to qualified immunity from suit.

This timely appeal and cross-appeal followed.

## DISCUSSION

We turn our attention first to the cross-appeal, in that a reversal of Judge Ellington's ruling with respect to res judicata would render the direct appeal moot. Although we are affirming Judge Ellington's ruling, it is also necessary to address the City's contentions pertaining to the proper scope of the record on appeal, in order to decide the direct appeal.

### I. Res Judicata

The City argues that plaintiffs' civil rights claims were compulsory counterclaims in the forfeiture actions; that although plaintiffs brought no formal counterclaims in those proceedings, their motions for the return of their real and personal properties operated as "equitable" counterclaims; that the prior judgments ordering the return of plaintiffs' real and personal property were "final," and were identical as to subject matter, cause of action, identity of parties and quality of parties, all as

required by *Mellor v. Chamberlin*, 100 Wn.2d 643, 673 P.2d 610 (1983). Plaintiffs argue that the civil rights claims were not compulsory and the subject matter, cause of action and quality of parties were not identical, in that the forfeiture proceedings were in rem; moreover, personalty forfeiture proceedings can be brought administratively under RCW 69.50.505 and may or may not ever be transferred to Superior Court, so that it would make no sense to require plaintiffs to raise civil rights claims in a forum where they cannot be litigated.

We resolve this issue on other grounds. In *Hayes v. City of Seattle*, 76 Wn. App. 877, 880, 888 P.2d 1227, *review granted*, 127 Wn.2d 1009 (1995), this court ruled that res judicata did not bar a civil rights claim which was not brought and joined with a permit applicant's writ action in a land use case. Although the permit applicant could have combined his writ and damages claims into a single action, *see Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 95, 829 P.2d 746 (1992), *cert. denied*, 506 U.S. 1079 (1993), writ applications are subject to very short statutes of limitation. Section 1983 claims are governed by a three-year statute of limitations. *Robinson v. City of Seattle*, 119 Wn.2d 34, 86, 830 P.2d 318, *cert. denied*, 506 U.S. 1028 (1992). "If res judicata applied, the limitation period for section 1983 claims involving land use permits would be effectively reduced from 3 years to 30 days. This result is incompatible with and must yield to the policies which underlie the 3-year period for Section 1983 claims." *Hayes*, 76 Wn. App. at 880.

■■ A similar situation exists with respect to forfeiture proceedings. Under RCW 69.50.505(c), the seizing law enforcement agency must notify interested persons of the intent to forfeit within 15 days of the seizure, after which those persons have 45 days in the event of seizure of personal property, and 90 days in the event of seizure of real property, to make a claim of ownership and seek a hearing. RCW 69.50.505(e). Failure to respond within these time periods will result in forfeiture by default. RCW

69.50.505(d). Although a claimant in a forfeiture proceeding has a longer period in which to act than does a claimant in a land use case, the three-year limitation period for civil rights claims under 42 U.S.C. § 1983 is mandated by the federal courts' determination that a uniform application of state law limitation periods for personal injury actions is best suited by the remedial purposes of § 1983. *Hayes*, 76 Wn. App. at 880 (citing *Robinson*, 119 Wn.2d at 85 (citing, in turn, *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985))).

We hold that under *Hayes*, *Robinson*, and *Wilson*, the short period following seizure and notice during which protesting parties are required to respond and seek a hearing cannot be imposed, directly or indirectly, on the parallel federal cause of action which may accrue by virtue of the seizure, under 42 U.S.C. § 1983. Consequently, a § 1983 claim is not foreclosed by reason of res judicata by a claimant's failure to raise it

■■ Moreover, we are persuaded by plaintiffs' citation to 6 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1411 (1990), explaining that even those courts which have held that a party who defends an in rem proceeding has submitted to the personal jurisdiction of the court continue to apply the exception contained in Rule 13(a): a counterclaim is not compulsory if the opposing party brought suit by attachment or other process by which the court does not acquire jurisdiction to render a personal judgment. *See also United States v. 35 Fulling Ave., Tuckahoe, N.Y.*, 772 F. Supp. 1433, 1438 (S.D.N.Y. 1991) (civil rights claim not compulsory counterclaim under FED. R. CIV. P. 13, in federal forfeiture action). Forfeiture proceedings are quasi-criminal only insofar as necessary to protect constitutional rights; the forfeiture itself is strictly a civil in rem proceeding. *Rozner v. City of Bellevue*, 116 Wn.2d 342, 351, 804 P.2d 24 (1991). We hold that Hansen was not required under CR 13(a) to raise his § 1983 claims in the forfeiture actions brought by the City. We also reject the City's contention that by moving for release of the seized property, Hansen

interposed an "equitable" counterclaim, so that he should have been required to raise his § 1983 claims, as well. The City cites no authority for this theory, and we know of none.

## II. New Evidence For Hearing on Reconsideration

■ The City argues that Judge McCutcheon abused his discretion by considering new evidence in support of plaintiffs' motion for reconsideration, i.e., the excerpts from Chief Frederiksen's deposition—which deposition was taken a month before the hearing on the City's summary judgment motion and could not, therefore, qualify as "newly discovered evidence" under CR 59. *See Richter v. Trimberger*, 50 Wn. App. 780, 785, 750 P.2d 1279 (1988) (trial court could not properly consider evidence that could have been discovered prior to trial court's ruling; therefore, evidence not properly before appellate court). Although the City prevailed at the motion for reconsideration, it argues that this court should not consider the new evidence in deciding the direct appeal.

The record reflects a tenable basis for Judge McCutcheon's discretionary decision to consider the new evidence. The City interposed a new declaration from Chief Frederiksen for the first time in its reply to plaintiffs' response to the City's summary judgment motion. At the hearing, plaintiffs requested a continuance to enable them to respond to the new evidence. Judge McCutcheon orally ruled that plaintiffs could respond in the course of a motion for reconsideration, instead. Plaintiffs did so; thereafter, the City responded to the plaintiffs' new evidence with additional new evidence of its own. Both sides were given ample opportunity to argue why the new evidence presented by both sides should or should not be the basis for reconsideration of the initial ruling. For reasons unrelated to the basis for the initial ruling, Judge McCutcheon ruled that the new evidence, which both sides agree he fully considered, would not change the initial ruling, based on a ground not argued at the initial hearing: qualified

immunity relieved the City of any liability which it may otherwise have incurred by virtue of Chief Frederiksen's acts as a final policy maker.

By authorizing the plaintiffs to present new evidence in the course of a motion for reconsideration, Judge McCutcheon effectively bifurcated the initial summary judgment hearing. Although some judges might have granted plaintiffs' motion for a continuance instead of utilizing the reconsideration procedure to allow plaintiffs to reply to the new declaration, and other judges might have denied both a continuance and the opportunity to present new evidence following the initial ruling, still other judges may well have made the same decision that Judge McCutcheon made. Such is the nature of discretionary rulings. There is no necessarily right or wrong answer to this or to the dozens of similar issues which arise in courtrooms all over the state, every day of the week. We are not in the business of substituting our judgment for those discretionary decisions of trial judges which are based on tenable grounds and reasons. We hold that the excerpts from Chief Frederiksen's deposition presented by *both* sides for the second half of the bifurcated hearing were properly before Judge McCutcheon, are properly part of the record on appeal, and properly may be considered by this court in deciding the direct appeal.

### III. Summary Judgment Dismissing Civil Rights Claims

Turning to the direct appeal, we observe that the parties cannot agree whether Judge McCutcheon dismissed the plaintiffs' civil rights claims based on the City's break in causation theory argued initially or on the qualified immunity theory articulated by the judge at the reconsideration hearing. Our own conclusion is that Judge McCutcheon relied on both theories, but the debate is entirely academic. In reviewing summary judgments, the appellate court engages in the same inquiry as the trial court. We start over, as it were, on the same record as was

before the trial court. Summary judgment will be granted only if the record demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Seven Gables Corp. v. MGM/ UA Entertainment Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The lawsuit must be dismissed if the defendant can demonstrate that the plaintiff is unable to establish a critical element of his claim. *Celotex v. Cartrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), *cert. denied*, 484 U.S. 1066 (1988).

■ A prima facie case of municipal civil rights liability will not exist absent proof of causation. *See* 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, custom, or usage, of any State . . . *subjects, or causes to be subjected*, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured . . . .

(Italics ours).

■ There is no question that a municipality may be a "person" under § 1983. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Lutheran Day Care*, 119 Wn.2d at 118. Although a municipality may not be held liable on the basis of respondeat superior, *Monell*, 436 U.S. at 691, municipalities can act only through their agents and officials. For the City to be liable under § 1983, plaintiffs must show that an act of an agent of the City actually causing the injury was performed under color of a policy or custom or usage of the City, or that the City adopted a course of action tailored to this particular seizure. Either type of decision, if made by the City's authorized decision makers, is an act of the City for purposes of § 1983. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986), *aff'd*, 947 F.2d 945 (6th Cir. 1991); *Lutheran*

*Day Care,* 119 Wn.2d at 120. Here, we are concerned with the second type of decision, a course of conduct tailored to this particular seizure, allegedly made by the City's authorized decision makers.

> Thus, the focus in determining whether a local government officer's act is attributable to the local government is whether the officer is the final policy-making authority for the local government in the area concerning the decision which the officer made. *Pembaur,* at 481-83[, 106 S. Ct. at 1299-1300] (plurality). In other words, "municipal liability under § 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur,* at 483-84[, 106 S. Ct. at 1300] (plurality).

*Lutheran Day Care,* 119 Wn.2d at 120-21.

Whether one or more city officials is a final policy maker is a question of state law to be resolved by the trial court before the matter is presented to the jury, i.e., the trial judge must identify those officials who speak with final policy-making authority for the local governmental body concerning the action alleged to have caused the constitutional or statutory violation at issue. Once those policy makers are identified by the court, it is for the jury to determine whether their decisions have caused the deprivation of rights at issue by policies which affirmatively command that they occur. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989), *overruled in part on other grounds by* 42 U.S.C. § 1981(c) (West Supp. 1992).

We observe that in the instant matter, the trial court has not yet been asked to make this determination. We also observe that although the question is described as a question of law, the trial court often will necessarily have to hear evidence in order to make the decision, so that it might more properly be described as a mixed question of fact and law, which is for the trial court to decide. Based on the testimony of Chief Frederiksen, it appears that the

trial court, upon remand, will need to decide whether the Chief, the City Attorney and the City Administrator were final policy makers with respect to the decision to proceed with the seizures and forfeitures of Hansen's personal and real property. We point out that the question is not only whether the Chief, the City Attorney and the City Administrator *did* make the decision as to the course of action in this individual case, but also whether they *could have* established local governmental policy in the usual sense of establishing policy governing future governmental conduct. If so, then it is both fair and consistent with the purposes of § 1983 to treat the decision as that of the municipality itself. *See Lutheran Day Care*, 119 Wn.2d at 122-23 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)). For purposes of the remainder of this opinion, we assume without deciding that the Chief, the City Attorney and the City Administrator could have established local governmental policy— which is yet to be decided by the trial court following remand.

With this background, we turn to the decisions made by Judge McCutcheon with respect to chain of causation and with respect to qualified immunity. First, the City (as distinct from the Chief of Police, Detective Miller, the City Attorney and the City Administrator, none of whom are named as defendants in this law suit) has no immunity. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 657, 100 S. Ct. 1398, 63 L. Ed. 2d 673, *reh'g denied*, 446 U.S. 993 (1980). We reverse Judge McCutcheon's ruling on reconsideration that the City enjoyed qualified immunity based on the good faith of the individual officials who made the decision to proceed with the seizures here at issue. Those officials likely would enjoy qualified immunity, if they had been sued, but their apparent good faith, which we also will assume for purposes of the remainder of the decision, does not entitle the City to qualified immunity.

Second, § 1983 requires that a "person" acting under color of law, policy or custom subjects or causes a citizen

or other person to be subjected to a deprivation of civil rights. A municipality can be a "person" for purposes of § 1983. *Monell*, 436 U.S. at 690. For the municipality to be liable, the act which causes the deprivation of rights must be pursuant to municipal policy as discussed above. The "policy" requirement is concerned with causation, not immunity. *See Lutheran Day Care*, 119 Wn.2d at 119-20 (citing *Pembaur*, 475 U.S. at 478-80; *Praprotnik*, 485 U.S. at 122; S. NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION: THE LAW OF SECTION 1983 § 6.07 (2d ed. 1986 & Supp. 1990) (policy requirement not only concerned with cause in fact, but also with duty)).[2]

"Once a plaintiff has proved the existence of a municipal policy or custom, the plaintiff must also demonstrate that the policy or custom caused the constitutional violation." Snyder, *The Final Authority Analysis: A Unified Approach to Municipal Liability Under Section 1983*, 1986 WIS. L. REV. 633, 670 (1986) (hereinafter "Snyder"). In *Monroe v. Pape*, 365 U.S. 167, 187, 81 S. Ct. 473, 484, 5 L. Ed. 2d 492 (1961), *overruled by Monell v. Department of Social Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court said that § 1983 should be read against the background of tort liability that makes a person responsible for the natural consequences of his or her actions. "Application of that principle to causation suggests that in section 1983 cases courts should apply cause-in-fact and proximate cause doctrines." Snyder, at 670.

Cause-in-fact, which refers to the "but for" consequences of an act, *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985), is at issue here only insofar as the City disputes whether one or more final policy makers, as opposed to underling detectives, made the decision to proceed with these seizures. As we have noted, Chief Frederiksen's de-

---

[2]This is because officials having final decision making authority owe a duty of care so as not to promulgate policy which will deprive citizens and others subject to their authority to deprivation of civil rights under color of law, policy or custom. Section 1983 serves two purposes: compensation and deterrence. *Owen*, 445 U.S. at 651.

position testimony provides substantial evidence from which a trier of fact could conclude that the Chief, City Attorney and City Administrator, as opposed to Detective Miller and his immediate supervisor, made the final decision.

> Legal causation, on the other hand, rests on policy considerations as to how far the consequences of defendant's acts should extend. It involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact. If the factual elements of the tort are proved, determination of legal liability will be dependent on "mixed considerations of logic, common sense, justice, policy, and precedent."

*Hartley*, 103 Wn.2d at 779 (citations omitted).

"Duty" and "legal causation" (proximate cause) are intertwined and linked to policy considerations. *Hartley*, 103 Wn.2d at 779. Professor Prosser put it this way: "[W]as the defendant under a duty to protect the plaintiff against the event which did in fact occur?" W. PROSSER, TORTS § 42 at 244 (4th ed. 1971).

> The question becomes particularly helpful in cases where the only issue is in reality one of whether the defendant is under any duty to the plaintiff at all—which is to say, whether he stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for his benefit. Or, reverting again to the starting point, whether the interests of the plaintiff are entitled to legal protection at the defendant's hands against the invasion which has in fact occurred. Or, again, reverting, whether the conduct is the "proximate cause" of the result. The circumlocution is unavoidable, since all of these questions are, in reality, one and the same.

PROSSER, at 244-45.

The City's argument in essence is this: Judge Agid's considered, independent determination that proximate cause supported the City's request for the seven seizure warrants, which determination was initially upheld by both Judges Steere and Bates, only to be overturned by

both after extensive briefing which was not available to Judge Agid when she made her determination, *should* as a matter of logic, common sense, justice, policy and precedent be viewed as an intervening cause which broke the chain of [legal] causation, regardless of the legal duty of the City and its final decision makers not to ride roughshod over Hansen's constitutional rights under color of municipal policy. The precedent relied upon by the City consists of 15 federal circuit and district court cases,[3] most of which predate the United States Supreme Court's decision of *Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986), and none of which are persuasive for the proposition that a magistrate's independent but nevertheless erroneous determination of probable cause breaks the chain of legal causation.

In *Malley*, the plaintiffs brought a civil rights action against a state trooper and the State of Rhode Island, alleging that the trooper in applying for warrants for their arrest violated their constitutional rights. Although a magistrate found probable cause to issue the warrants, the grand jury failed to indict. Nevertheless, the plaintiffs suffered damage to their reputations, due to publicity attendant to their arrest. The trial court directed a verdict in favor of both the trooper and the state. The plaintiffs appealed only the ruling with respect to the trooper. The trial court's primary rationale for directing the verdicts

---

[3]*See Goodwin v. Metts*, 885 F.2d 157, 162 (4th Cir. 1989), *cert. denied sub nom. Maxwell v. Goodwin*, 494 U.S. 1081, 110 S. Ct. 1812, 108 L. Ed. 2d 942 (1990); *Rodriguez v. Richey*, 556 F.2d 1185, 1193 (5th Cir. 1977), *cert. denied*, 434 U.S. 1047 (1978); *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982), *cert. denied*, 459 U.S. 1137 (1983); *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988); *Duncan v. Nelson*, 466 F.2d 939, 942 (7th Cir.), *cert. denied*, 409 U.S. 894 (1972); *Jones v City of Chicago*, 856 F.2d 985, 993-94 (7th Cir. 1988); *Ames v. United States*, 600 F.2d 183, 185 (8th Cir. 1979); *Smiddy v. Varney*, 803 F.2d 1469, 1472 (9th Cir. 1986) (*Smiddy* I); *Smiddy v. Varney*, 665 F.2d 261, 267 (9th Cir. 1981), *cert. denied*, 459 U.S. 829 (1982) ( *Smiddy* II); *Garmon v. Lumpkin County, Ga.*, 878 F.2d 1406, 1410 (11th Cir. 1989); *McLaughlin v. Alban*, 775 F.2d 389, 391 (D.C. Cir. 1985); *Dellums v. Powell*, 566 F.2d 167, 192-93 (D.C. Cir. 1977), *cert. denied*, 438 U.S. 916 (1978); *Mitchell v. City of Hartford*, 674 F. Supp. 60 (D. Conn. 1986); *Taylor v. City of Nederland, Tex.*, 685 F. Supp. 616, 618 (E.D. Tex. 1988), *aff'd*, 868 F.2d 1269 (5th Cir. 1989); and *Hamrick v. City of Eustace*, 732 F. Supp. 1390, 1393 (E.D. Tex. 1990).

was that the chain of causation was broken by the magistrate's independent determination that there was probable cause to issue the arrest warrants. *Malley*, 475 U.S. at 338-39. Because only the trooper remained as a defendant, the Supreme Court's analysis turned on qualified immunity (it will be recalled that a governmental body has no qualified immunity under § 1983). Nevertheless, the Supreme Court disapproved of the trial court's break in the chain of causation analysis:

> Petitioner [the trooper] has not pressed the argument that in a case like this the officer should not be liable because the judge's decision to issue the warrant breaks the causal chain between the application for the warrant and the improvident arrest. It should be clear, however, that the District Court's "no causation" rationale in this case is inconsistent with our interpretation of § 1983. As we stated in *Monroe v. Pape*, 365 U.S. 167, 187[, 81 S. Ct. 473, 484, 5 L.Ed.2d 492] (1961), § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Since the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read § 1983 as recognizing the same causal link.

*Malley*, 475 U.S. at 344-45 n.7.

Although note 7 is dicta, as plaintiffs point out, the *Malley* court thereby approved the rationale of the First Circuit, which had stated in the same case before the Supreme Court granted certiorari:

> We believe the foregoing disposes of the Fifth Circuit's "chain of causation" approach as well. *Rodriguez v. Ritchey*, 556 F.2d 1185, 1193 (5th Cir. 1977), *cert. denied*, 434 U.S. 1047, 98 S. Ct. 894, 54 L.Ed.2d 799 (1978); *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir.), *cert. denied*, 459 U.S. 1005, 103 S. Ct. 361, 74 L.Ed.2d 397 (1982). Despite the fact that this approach is couched in terms of a principle of causality, we find that at bottom it rests upon the same concerns with culpability and immunity already discussed above. The "chain of causation" theory does not withstand scrutiny. If we use the tort concept of "but for" cause to determine when a causal connection is present, it seems clear that "but for" the police

officer's submission of the warrant to the magistrate, the warrant would not issue and the search or arrest would not occur.

*Briggs v. Malley*, 748 F.2d 715, 720-21 (1st Cir. 1984).

■ In sum, the precedent upon which the City relies confuses the concepts of immunity and causation. A police officer has qualified immunity, so long as he or she does not misrepresent facts to the magistrate, but this is because the common law granted such immunity, not because the magistrate's independent but erroneous determination of probable cause broke the chain of causation. It did not. Because the municipality has no qualified immunity, the magistrate's erroneous decision does not relieve the municipality of liability. Qualified immunity serves to protect the officer on the street, not the municipality.

Were we to rule that Judge Agid's determination of probable cause broke the chain of causation, plaintiffs would have no remedy for the alleged violation of their constitutional rights. Judicial officers are absolutely immune from liability for their judicial determinations, no matter how erroneous. Where an erroneous judicial determination fails to remedy a breach of duty on the part of a final policy maker which is the "but for" cause of violation of a citizen's constitutional rights, it would not serve the purposes of § 1983 to conclude that there is no legal causation, by reason of that very same erroneous judicial determination.

Thus, we find no basis in logic, common sense, justice, policy or precedent for ruling that the chain of legal causation was broken by Judge Agid's determination of probable cause.[4]

Affirmed in part (Judge Ellington's challenged rulings); reversed in part (Judge McCutcheon's challenged rulings); remanded for a determination by the trial court as to

---

[4]Because the plaintiffs' appeal has merit, we do not reach the City's request for an award of attorney fees based on a frivolous appeal.

whether Chief Frederiksen, the City Attorney and/or the City Administrator are final policy makers, and if so, for a trial of the merits of plaintiffs' § 1983 civil rights claims.

WEBSTER and BECKER, JJ., concur.

Review denied at 130 Wn.2d 1008 (1996).