[No. 26076-6-I.   Division One.   August 5, 1991.]

MICHAEL E. FANN, ET AL, *Respondents*, v. SAM
SMITH, ET AL, *as Trustees, Appellants.*

*Mark H. Sidran, City Attorney,* and *Gordon B. David-
son, Assistant,* for appellants.

*Mark L. Lorbiecki,* for respondents.

WEBSTER, A.C.J. — Seven Seattle Police Officers (the
Officers) brought an action seeking a declaratory judg-
ment to determine whether they were entitled to retire-
ment and pension benefits under the Police Relief and
Pension Fund (PRPF) in addition to their membership in

the Law Enforcement Officers' and Fire Fighters' Retirement System Act (LEOFF). The trial court granted the judgment, and the PRPF Trustees (the Trustees) appeal. We find that the trial court properly granted the declaratory judgment in favor of the Officers.

FACTS

The Officers were hired by the City of Seattle as police cadets between June 25, 1970, and April 28, 1971, and sworn in as police officers between May 13, 1971, and December 26, 1973.[1] Between the date of hiring as police cadets and the date upon which they were sworn in as police officers, each of the Officers made contributions to the City Employees' Retirement System (CERS).[2]

After the Officers were sworn in, they began making contributions to the LEOFF retirement system. The LEOFF act, RCW 41.26.040 (effective Feb. 12, 1970), states:

> (1) All fire fighters and law enforcement officers employed as such *on or after March 1, 1970*, . . . shall be members of the retirement system established by this chapter . . . to the exclusion of any pension system existing under any prior act except as provided in subsection (2) of this section.
> (2) Any employee serving as a law enforcement officer or fire fighter *on March 1, 1970*, who is then making retirement contributions under any prior act shall have his membership transferred to the [LEOFF] system . . ..

(Italics ours.) Subsection (2) did not apply to the Officers since they were not sworn police officers *ON* March 1,

---

[1]Matson was hired as a police cadet on June 26, 1970, and sworn as a police officer on March 23, 1973. Sabourin was hired as a police cadet on June 25, 1970, and sworn as a police officer on March 23, 1973. Nilsen was hired as a police cadet on September 18, 1970, and sworn as a police officer on December 26, 1973. Fann was hired as a police cadet on September 18, 1970, and sworn as a police officer on May 13, 1971. Moffat was hired as a police cadet on November 10, 1970, and sworn as a police officer on December 26, 1973. Maser was hired as a police cadet on March 1, 1971, and sworn as a police officer on December 26, 1973. Macomber was hired as a police cadet on April 28, 1971, and sworn as a police officer on December 26, 1973.

[2]Matson paid $452.60. Sabourin paid $452.65. Nilsen paid $364.33. Fann paid $34.70. Moffat paid $317.70. Maser paid $209.90. Macomber paid $164.30.

1970. Therefore, the Officers had made contributions under both CERS and LEOFF even though there was no provision for coordinating excess benefits since they did not fall under RCW 41.26.040(2).

In 1973, RCW 41.20.170 (effective Jan. 1, 1974) was enacted. It states:

> Any *former employee of a department of a city* of the first class who (1) was a *member of the employees' retirement system of such city,* and (2) is *now employed within the police department* of such city, may transfer his membership from the city employees' retirement system to the city's police relief and pension fund system by filing a written request with the board of administration and the board of trustees, respectively, of the two systems.
>
> . . . .
> No person so transferring shall thereafter be entitled to any other public pension, except that provided by chapter 41.26 RCW [LEOFF] or social security, which is based upon service with the city.

(Italics ours.) In 1974, pursuant to RCW 41.20.170, the Officers transferred their contributions from the CERS to the PRPF. At this point, the Officers were technically covered under both the PRPF and LEOFF systems.

In 1984, the Seattle City Attorney, in response to a letter from the Trustees, issued an opinion stating that police cadets, similarly situated to the Officers here, were not entitled to benefits under RCW 41.20.170. The Officers then brought a declaratory action to ascertain whether they were so entitled. The court was not asked to determine benefits. The relief sought was a request that the Officers' membership in the PRPF under RCW 41.20.170 be recognized. The trial court granted judgment in favor of the Officers holding that they had comported with the requirements of RCW 41.20.170.

## DISCUSSION

We first decide whether the trial court erred in finding that the Officers were entitled to membership in the PRPF under RCW 41.20.170. The Trustees claim that the Officers are not entitled to membership in the PRPF

because none of them satisfied the "former" city employee requirement of RCW 41.20.170.[3] This claim is based on the premise that when the Officers were hired as police cadets they became employees of the police department and, therefore, they were always employees of the police department as opposed to "former" city employees.[4] We disagree.

■ We find that this issue was correctly decided by the trial court. The trial court held:

> Reading 41.20.170, the first sentence says: Any former employee of a department of a city of the first class, who was a member of the Employees' Retirement System of such a city [—i]t's clear to me that the [Officers] were . . . member[s] of the [City Employees'] Retirement System . . . or they would not have [made] contributions . . . to . . . that plan.
>
> Therefore, the fact that the only evidence before me is that they were apparently always employees of, or at least technically always employees of the Police Department, is of no consequence. *I will imply from the fact that they made contributions to the City's retirement system, that they were, in fact, technically, employees of the City as opposed to technically employees of the Police Department.*

(Italics ours.) The Officers, while serving as police cadets, were city employees making contributions to the CERS, not the police department retirement system. They did not begin making contributions to the police department

---

[3]The Trustees also challenge conclusion of law 3.3 which states "[e]ach of the seven [Officers] has comported with the requirements of RCW 41.20.170 and thus is a member of the retirement system described at RCW Chapter 41.20." This claim is based on grounds that conclusion 3.3 is a conclusory finding of fact which is not supported by the record. However, even if conclusion of law 3.3 can be considered a finding of fact, it is supported by substantial evidence (see *infra*).

[4]The Trustees also claim that since the Officers did not "experience[] an interruption or break in [their] service as . . . 'police cadet[s]', none ever had occasion to 'return' to City service in the capacity of a 'former employee'." The "former employee" status requirement is not defined in RCW 41.20. Absent a statutory definition, those words must be afforded their ordinary meanings, which may be determined by reference to such extrinsic aids as dictionaries. *Brenner v. Leake*, 46 Wn. App. 852, 732 P.2d 1031 (1987). The ordinary meaning of the word "former" is "preceding in order of time". *Webster's Third New International Dictionary* 894 (1986). The dictionary definition of "former" does not yield a definition in accordance with the Trustees' "returning" definition.

system (*i.e.*, LEOFF) until they were sworn in as officers. Assuming arguendo that they were police department employees while serving as cadets, they nevertheless were city employees paying into the city retirement system as opposed to the police retirement system. Therefore, as the trial court found, the Officers were "technically, employees of the City as opposed to technically employees of the Police Department", thereby satisfying the "former" city employee requirement of RCW 41.20.170.

## DOUBLE RECOVERY

We next consider whether the Officers, who are entitled to membership in the PRPF, would receive a "double recovery" since they are also members of LEOFF. The Trustees claim that public policy does not entitle the Officers to the benefits of both the PRPF and LEOFF retirement systems since this would entitle them to a double recovery. However, the Officers concede that they are not seeking, nor are they entitled to, a double recovery. Instead, they claim that they are entitled only to the better of the benefits offered under each system. They argue that as opposed to recovery under both retirement systems, they are only seeking "*Mulholland* type benefits" which would coordinate their benefits in the same fashion as RCW 41.26.040(2). *Mulholland v. Tacoma*, 83 Wn.2d 782, 522 P.2d 1157 (1974).

In *Mulholland*, the court stated:

> The city contends that plaintiff is attempting to ultimately collect two pensions, one under RCW 41.20 and the other under RCW 41.26. The plaintiff argues, and we agree with him, that he is attempting to collect a single pension. He has a vested right to his pension under RCW 41.20 and when he retires from his present employment he will come under the provisions of RCW 41.26 which by its very terms coordinates the benefits under both acts.

*Mulholland*, at 786. However, here, unlike in *Mulholland*, the mechanism for coordinating benefits (RCW 41.26-.040(2)) is not available since the Officers were not sworn in on March 1, 1970, as required by subsection (2). This

means that the Officers were under both PRPF and LEOFF, even though there was no mechanism for coordinating the two pensions since RCW 41.26.040(2) did not apply.

Due to this legislative gap, we are left with no choice but to find that this issue is not ripe for review. At trial, the Officers' counsel stated:

> [W]e've only come to this Court for the first step of this, and that is, given the fact that the clear language of the legislation . . . grants to the Plaintiffs membership in RCW 41.20[, t]he only thing that we have sought from this Court is a declaration of their membership in 41.20. We have not asked this Court for a determination of benefits.
>
> I think that, procedurally, there is no requirement that this Court determine benefits. . . .
>
> None of these plaintiffs is retiring tomorrow . . . They have not asked for benefits. . . . The precise, procedural posture of this case was a declaratory judgment requesting that membership in 41.20 be recognized. . . .
>
> *If there is a problem, if there is a conflict in laws, that's for a time somewhere down the pike.*

(Italics ours.) We reiterate that the Officers concede they are not seeking, nor are they entitled to, a double recovery.

It can be inferred that the Legislature intended to allow city employees paying into CERS to transfer their membership into LEOFF since 3 years earlier it had made the latter the exclusive retirement act for police officers. Furthermore, although RCW 41.26.040 does not expressly apply to the Officers, it does express the Legislature's intent on how to handle the problem of a potential double recovery and how to coordinate benefits. We are aware that RAP 7.3 allows us "to determine whether a matter is properly before [us], and to perform all acts necessary or appropriate to secure the fair and orderly review of a case." RAP 7.3. However, we decline to do so and instead defer to the Legislature since that body is better equipped to evaluate the issue and should not have its power usurped by this court.

The trial court's order granting the Officers' declaratory judgment, thereby recognizing their right to membership in the PRPF, is affirmed.

PEKELIS and KENNEDY, JJ., concur.