398

GERALD B. ADAMS ET AL., *Appellants,* v. THE CITY OF SEATTLE
ET AL., *Respondents*.

*Kenneth W. Masters* and *Shelby R. Frost Lemmel* (of *Masters Law Group PLLC*), for appellants.

*Robert W. Ferguson, Attorney General,* and *Spencer W. Daniels* and *Kathryn C. Wyatt, Assistants,* for respondent.

¶1 SPEARMAN, J. — The appellants, commissioned law enforcement officers for the city of Seattle (City) who previously worked for the City in other, noncommissioned positions and made contributions to the City Employees' Retirement System (CERS), claim they are entitled to have their time in noncommissioned positions considered "service" credits for purposes of calculating their benefits under the Washington Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF). We hold that the officers' time in noncommissioned positions here does not qualify as "service" under the plain language of the LEOFF statutes. Accordingly, we affirm the trial court's summary dismissal of appellants' claims.

## FACTS

¶2 The facts are undisputed. The appellants (Officers) became commissioned law enforcement officers in the 1960s or early 1970s.[1] Before becoming commissioned officers, they held noncommissioned positions with the City.[2] While employed in noncommissioned positions, the Officers were enrolled in and made contributions to CERS, which was established by the City pursuant to chapter 41.44

---

[1] The original lawsuit was filed by 19 retired city law enforcement officers and 6 active officers. Of the original plaintiffs, 22 joined in this appeal; 17 are retired and 5 are active officers.

[2] One was a laborer, 2 were transit operators, and the remaining 19 were police cadets.

RCW. Consistent with RCW 41.44.060, CERS excludes police officers, who were enrolled in the city Police Relief and Pension Fund (PRPF), established by the City pursuant to chapter 41.20 RCW.

¶3 In 1969, the Washington State Legislature established LEOFF, a statewide retirement system for law enforcement officers and fire fighters.[3] LAWS OF 1969, 1st Ex. Sess., ch. 209, codified at chapter 41.26 RCW. LEOFF, which became effective on March 1, 1970, replaced municipal police and fire fighter pension plans throughout the state, including PRPF, and created a single statewide system administered by the Department of Retirement Systems (Department).[4] Law enforcement officers participating in a prior pension plan on March 1, 1970 and who were then making retirement contributions under such a plan were mandatorily transferred to LEOFF as of that date. RCW 41.26.040(2). Law enforcement officers hired after March 1, 1970 were automatically enrolled in LEOFF. RCW 41.26.040(1).

¶4 Accordingly, when LEOFF became effective on March 1, 1970, the City reported to the Department the members of its police department who were commissioned officers, including some of the Officers here. Those Officers' PRPF memberships, which began as they became commissioned officers, were transferred to LEOFF under RCW 41.26-.040(2). The remaining Officers were enrolled directly into LEOFF between March 1971 and December 1973, as they became commissioned officers.[5] *Id.* The City reported to the Department those Officers' employment histories, distin-

---

[3] Because no fire fighters are involved in this appeal, we will reference only law enforcement officers in our opinion.

[4] Later, the legislature split LEOFF into two plans. LEOFF Plan 1 covers employees hired before October 1, 1977 and LEOFF Plan 2 covers employees hired on or after October 1, 1977. *See* RCW 41.26.030(21), (22). Because all of the Officers are in LEOFF Plan 1, "LEOFF" in this opinion refers to LEOFF Plan 1.

[5] Some of the Officers, those who became commissioned law enforcement officers before LEOFF was enacted, had enrolled in CERS and PRPF at the time they were enrolled in LEOFF. The remaining Officers, those who became commissioned law enforcement officers after LEOFF was enacted, had enrolled in only CERS at the time they were enrolled in LEOFF. This distinction between the

guishing between time in noncommissioned positions and time as a commissioned officer.

¶5 Because some law enforcement officers were already enrolled in other legislatively authorized pension systems when LEOFF was enacted, the LEOFF statutes included a provision that if the benefits an officer would have received under the prior system (here, PRPF) were better than under LEOFF, the officer's employing city would pay the additional amount (the "excess benefit") the officer would have received under the prior system.[6]

¶6 In 1973, the legislature amended RCW 41.20.170 to permit former city employees who were members of CERS and who were presently employed within the City's police department to request a transfer of their CERS memberships to PRPF. LAWS OF 1973, ch. 143, § 2, amending RCW 41.20.170. The amendment allowed police department employees with prior service in noncommissioned positions to have such service counted toward the service credit years (up to 30) used to determine their retirement allowance under PRPF. Following the January 1, 1974 effective date of this legislation, all of the Officers requested that their CERS memberships be transferred to PRPF.

¶7 The Officers began to retire in 1995. The LEOFF monthly retirement allowances for the retired Officers (or

two groups does not appear material to any issue in this case, and neither party makes reference to it. All of the Officers, after later transferring their CERS memberships to PRPF pursuant to RCW 41.20.170, had memberships in both PRPF and LEOFF.

[6] Specifically, RCW 41.26.040(2) provides, in pertinent part:

In addition [to the retired officer's LEOFF benefits], his or her benefits under the prior retirement act to which he or she was making contributions at the time of this transfer shall be computed as if he or she had not transferred. For the purpose of such computations, the employee's creditability of service and eligibility for ... benefits shall continue to be provided in such prior retirement act, as if transfer of membership had not occurred.

The legislature included this provision in recognition of the general principle that it may not change retirement benefits it has established for public employees to the detriment of the employees. *Bakenhus v. City of Seattle*, 48 Wn.2d 695, 296 P.2d 536 (1956) (establishing general principle); *Mulholland v. City of Tacoma*, 83 Wn.2d 782, 552 P.2d 1157 (1974) (recognizing application of principle to LEOFF statutes).

the statement of months of service credit, for the Officers who are still active employees) do not include service credit for time in noncommissioned employment. Regarding PRPF benefits, each Officer has at least 30 years of service credit under PRPF (inclusive of time in noncommissioned positions), and the benefit from the City is thus capped at 60 percent (the maximum) of the current compensation for the retirement position.[7]

¶8 In January 2012, the Officers filed suit in superior court against the City and the Department, seeking a declaratory judgment that they were entitled to additional LEOFF benefits (or, for active employees, service credit) for time they worked in noncommissioned positions.[8] All parties moved for summary judgment. The trial court granted summary judgment to the defendants. The Officers appeal only as to the Department.

## DISCUSSION

¶9 The Officers appeal from summary judgment, claiming they are entitled to have their service in noncommissioned employment accounted for as service credit when calculating their LEOFF benefits. This court reviews summary judgments de novo. *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 601, 200 P.3d 695 (2009). The issue before us concerns statutory construction, which is also reviewed de novo. *Olympic Tug & Barge, Inc. v. Dep't of Revenue*, 163 Wn. App. 298, 306, 259 P.3d 338 (2011) (citing *Dot Foods, Inc. v. Dep't of Revenue*, 166 Wn.2d 912, 919, 215 P.3d 185 (2009)), *review denied*, 173 Wn.2d 1021, 272 P.3d 850 (2012). Our "objective is to ascertain and carry out the legislature's

---

[7] Ten of the retired Officers are receiving excess benefit payments from the City.

[8] The Officers' complaint also alleged that the State or the City had violated chapter 49.52 RCW, the "Wage Antirebate Act," and chapter 49.46 RCW, the Washington Minimum Wage Act. The Officers present no argument on these claims, which we consider abandoned. *See State v. Motherwell*, 114 Wn.2d 353, 358 n.3, 788 P.2d 1066 (1990) (assignment of error unsupported by argument or authority considered abandoned on appeal).

intent." *Id.* (quoting *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 243 P.3d 1283 (2010)). We look to the plain meaning of the words used, both in their immediate statutory context and in the context of the whole statutory scheme. *Id.* If a statute is unambiguous, we simply apply the language as written. *Id.* at 306-07 & n.4.

¶10 Under the LEOFF statutes, monthly retirement allowances are determined under formulas using "final average salary"[9] and months of "service," as follows:

> A member upon retirement for service shall receive a monthly retirement allowance computed according to his or her completed creditable service credit years[10] of service as follows: Five years but under ten years, one-twelfth of one percent of his or her final average salary for each month of service; ten years but under twenty years, one-twelfth of one and one-half percent of his or her final average salary for each month of service; and twenty years and over one-twelfth of two percent of his or her final average salary for each month of service . . . .

RCW 41.26.100. "Service," as pertinent here, is defined as follows:

> "Service" for [LEOFF] plan 1 members, means all periods of employment for an employer as a . . . law enforcement officer . . . .
>
> (i) For members retiring after May 21, 1971 who were employed under the coverage of a prior pension act before March 1, 1970, "service" shall also include (A) such military service not exceeding five years as was creditable to the member as of March 1, 1970, under the member's particular prior pension act, and (B) such other periods of service as were then creditable to a particular member under the provisions of RCW 41.18.165, 41.20.160, or 41.20.170. However, in no event shall credit be allowed for any service rendered prior to March 1, 1970, where the member at the time of rendition of such service was employed in a position covered by a prior pension

---

[9] This term, defined in RCW 41.26.030(15)(a), is not material to the issue before us.

[10] "Service credit year" is defined as "an accumulation of months of service credit which is equal to one when divided by twelve." RCW 41.26.030(30).

act, unless such service, at the time credit is claimed therefor, is also creditable under the provisions of such prior act.

RCW 41.26.030(28)(a). "Law enforcement officer" is defined, in pertinent part, as "any person who is commissioned and employed by an employer on a full time, fully compensated basis to enforce the criminal laws of the state of Washington . . . ." RCW 41.26.030(18).

¶11 Under RCW 41.26.030(28)(a), therefore, "service" as relevant here is (1) periods of employment as a law enforcement officer, (2) military service as defined in subsection (A) of RCW 41.26.030(28)(a)(i), or (3) "such other periods of service" as defined in subsection (B). It is undisputed that the noncommissioned positions in which the Officers worked did not constitute employment as "law enforcement officers." It is also undisputed that the Officers did not have "military service" under subsection (A).

¶12 The question, therefore, is whether the Officers' employment in noncommissioned positions constitutes "such other periods of service as were then creditable to a particular member under the provisions of RCW . . . 41.20.170" under subsection (B). The Officers contend it does. They contend "then creditable" refers to the date an officer retires (after May 21, 1971) and that RCW 41.20.170 made their CERS contributions "then creditable" under PRPF. We disagree.

¶13 The phrase "then creditable" in subsection (B), as in subsection (A), plainly refers to service creditable under the specified pension statutes (RCW 41.18.165, 41.20.160, or 41.20.170) as of March 1, 1970. The Officers argue that if the legislature intended "then creditable" in subsection (B) to refer to March 1, 1970, it would have specified that date, as it did in subsection (A). But this argument cuts just as well against the Officers' position; had the legislature intended "then creditable" to refer to "then creditable as of the date of retirement after May 21, 1971," it could have used such language.

¶14 Moreover, the choice of verb tense in the language of the statute supports our view that "then creditable" in subsection (B) refers to March 1, 1970: "For members retiring after May 21, 1971 who *were* employed under the coverage of a prior pension act before March 1, 1970, 'service' shall also include . . . (B) such other periods of service as *were* then creditable to a particular member under the provisions of RCW 41.18.165, 41.20.160, or 41.20.170." RCW 41.26-.030(28)(a)(i) (emphasis added). Because retirement "after May 21, 1971" could take place in the future, it is apparent that "were then creditable" in subsection (B) refers to the time when the members "were employed . . . before March 1, 1970." RCW 41.26.030(28)(a)(i)(B).

¶15 The Officers also contend it is nonsensical to read the phrase "as were then creditable to a particular member under the provisions of RCW . . . 41.20.170" to refer to a period before RCW 41.20.170 was amended in 1973 to permit the transfer of service credit from CERS to PRPF. They contend the legislature is presumed to have had subsection (B) in mind when it amended RCW 41.20.170. And thus, they contend, it intended to permit all service allowed under PRPF (including CERS service) to be credited to LEOFF. We disagree.

¶16 The legislature specifically included as service under LEOFF "such other periods of service as were *then* creditable . . . under . . . RCW . . . 41.20.170." RCW 41.26-.030(28)(a)(i)(B) (emphasis added). The reference to RCW 41.20.170 was to the statute, as it existed on March 1, 1970, not to the statute as amended in 1973. If the legislature intended to undo or otherwise alter subsection (B) by the 1973 amendment, it could have easily done so. Because it did not, we conclude the Officers' CERS service, which was not creditable to PRPF until 1974, does not count as "service" under LEOFF.

¶17 The Officers argue that even if "then creditable" refers to March 1, 1970, their CERS contributions were creditable as of that date because RCW 41.20.170 states

that "all accumulated contributions" "shall be computed and credited to such member as *a part of his or her period of employment in*" PRPF (emphasis added). Therefore, they argue, LEOFF must also include the prior contributions transferred as part of (i.e., "computed and credited" within) PRPF. We disagree. The cited statute pertains to how CERS contributions will be treated in PRPF, not LEOFF.

¶18 The Officers finally contend that LEOFF must account for the time they worked in noncommissioned positions under the 1973 amendment to RCW 41.20.170 (permitting transfer of CERS memberships to PRPF), which provides:

> [T]he transfer of membership to [PRPF] shall be made, together with a transfer of *all accumulated contributions* credited to such member. The board of administration of [CERS] shall transmit to the board of trustees of [PRPF] a record of service credited to such member *which shall be computed and credited to such member as a part of his or her period of employment in* [PRPF].

RCW 41.20.170 (emphasis added). They note that an officer making a transfer from CERS to PRPF "shall have all the rights, benefits and privileges that he or she would have been entitled to had he or she been a member of [PRPF] from the beginning of his or her employment with the city." *Id.* They argue that they had a vested right to benefits from all of their prior city service, and this time should be counted toward their retirement under LEOFF. They cite *Fann v. Smith*, 62 Wn. App. 239, 814 P.2d 214 (1991) in support.

¶19 We reject this argument. The cited statute does not pertain to LEOFF benefits but to transfer of CERS memberships to PRPF. The Officers are not claiming a loss of benefits due under PRPF, but rather claiming the service credit at issue is due under LEOFF. Although PRPF does not exclude service in noncommissioned employment, whether CERS credits transferred to PRPF is irrelevant to what benefits are due or how benefits are calculated under

LEOFF. The Officers are not deprived of any "rights, benefits and privileges" that they would have been entitled to had they been a member of PRPF from the beginning of their city employment.[11] Furthermore, benefits under LEOFF are not calculated based on PRPF contributions, but rather on months of eligible "service." Such service, as we have explained, is limited to employment as a law enforcement officer or "service" as defined under subsections (A) and (B) of RCW 41.26.030(28)(a)(i).

¶20 *Fann*, which pertained to whether CERS memberships of former police cadets could be transferred into PRPF, is inapposite. There, city police officers who previously made contributions into CERS as police cadets sought a declaratory judgment that they were entitled to membership in PRPF, in addition to their membership in LEOFF (which began once they were sworn in as police officers). *Fann*, 62 Wn. App. at 239-41. The defendants, the PRPF trustees, argued that the officers could not transfer their memberships to PRPF under RCW 41.20.170 because they were not former city employees but rather employees of the police department. *Id.* at 241-42. We disagreed and determined that the cadets were plainly city employees, as evidenced by their having paid contributions into CERS. *Id.* at 242-43. We held that RCW 41.20.170 allowed the officers to transfer their CERS memberships into PRPF. Here, there is no issue with whether the Officers validly transferred their CERS memberships to PRPF.

¶21 The Department contends, and we agree, that what the Officers seek is to combine the most advantageous features of PRPF's and LEOFF's formulas for calculating retirement benefits. Under LEOFF, the benefit is based on a multiplier times months of service credit, and a retiring officer can have all of his or her months of qualifying service considered for LEOFF, with no cap. *See* RCW 41.26.100. In contrast, benefits under PRPF are based

---

[11] Nor have the Officers ever alleged any harm from transferring their CERS memberships to PRPF.

primarily on the salary of the position from which the officer retired but the formula provides for an increase in the monthly retirement allowance for years of service above 25 years "to a maximum of five additional years." RCW 41.20.050. Service credit over 30 years does not increase the retirement allowance from PRPF. The Officers favor PRPF's feature allowing them to transfer their service in noncommissioned positions (CERS credits) into PRPF, but not its feature capping their service credit at 30 years. They favor LEOFF's feature placing no cap on the amount of service credit, but not its feature limiting "service" to service as a commissioned officer.

¶22 But in *Vallet v. City of Seattle*, 77 Wn.2d 12, 459 P.2d 407 (1969), our Supreme Court rejected an attempt by a retiree to apply certain provisions in a 1915 pension law along with certain provisions in a successor 1961 pension law. *Id.* at 19. The court stated:

> The language of our past decisions does not contemplate a situation whereby a pensioner is entitled to select the best parts of several pension acts relating to him. To hold otherwise would have a serious effect on the everyday administration of pension plans in this state.

*Id.* at 21-22. Likewise, in *McAllister v. City of Bellevue Firemen's Pension Bd.*, 166 Wn.2d 623, 210 P.3d 1002 (2009), the court rejected the argument of retired fire fighters that the city of Bellevue, in determining excess benefits under a city pension plan, was required to apply a salary definition contained in LEOFF rather than the definition in the city pension plan, determining the retirees were attempting to " 'cherry pick' the best of LEOFF and [the city pension act]." *Id.* at 632. The court observed, "To read the LEOFF statutes to allow the McAllisters to 'blend' the best of two different pension plans would run counter to our holding in *Vallet* and introduce instability into the administration of the plans." *Id.*

¶23 We hold that under the plain language of the LEOFF statutes, the Department properly excludes the

Officers' time in noncommissioned employment from the "service" credits used to calculate their LEOFF benefits. As in *Vallet* and *McAllister*, the Officers may not combine the features of two different public retirement plans to create a plan the legislature did not enact. The legislature has not provided for combining features of different retirement plans but rather for coordinating the benefits that a member would receive under the respective plans. Here, the LEOFF act "by its very terms coordinates the benefits under both" LEOFF and PRPF. *Mulholland v. City of Tacoma*, 83 Wn.2d 782, 785-86, 522 P.2d 1157 (1974); RCW 41.26.040(2).

¶24 Affirmed.

LEACH, C.J., and SCHINDLER, J., concur.