

**FILE**

IN CLERKS OFFICE

SUPREME COURT, STATE OF WASHINGTON

DATE JUN 1 2 2014

_____
for CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on June 12, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| FISHER BROADCASTING–<br>SEATTLE TV LLC dba KOMO 4, | ) ) ) | No. 87271-6 |
| Appellant, | ) ) | |
| v. | ) ) | En Banc |
| CITY OF SEATTLE, a local agency,<br>and the SEATTLE POLICE<br>DEPARTMENT, a local agency, | ) ) ) ) | |
| Respondents. | ) ) ) | Filed JUN 1 2 2014 |

GONZÁLEZ, J.—KOMO news reporter Tracy Vedder made three unsuccessful public records requests to the Seattle Police Department (SPD) relating to "dash-cam" videos taken by SPD officers. We conclude that two of the requests should have been granted.

## FACTS

Since 2007, SPD's entire patrol fleet has been equipped with in-car video and sound recording equipment. SPD's recording system was manufactured by COBAN Technologies, a private company that provides both the recording equipment and the computer system that manages at least the

initial video storage and retrieval. The COBAN system was not integrated into SPD's records management system or its computer aided dispatch system, and at least at the time this case arose, recordings could be searched only by "officer's name, serial number, date and time." Clerk's Papers (CP) at 403, 440, 454.

SPD's written policy directs officers to use their in-car video recorders to "document all traffic stops, pursuits, vehicle searches and citizen contacts when occurring within camera range." CP at 88 (SPD Policies and Procedures chapter 17.260). Under this written policy, videos are kept for 90 days unless an officer tags an individual video as "required for case investigation/prosecution," in which case they are kept for at least three years. *Id.* Under SPD policy, videos needed longer than three years should be burned onto a DVD and stored in a relevant case file. Otherwise, videos are scheduled to be destroyed after three years.

In 2010, Vedder made both informal requests for information and a series of formal Public Records Act (PRA), chapter 42.56 RCW, requests. On August 3, 2010, she asked for user and training manuals on the dash-cam video system. SPD denied this request on the grounds the materials were protected under federal copyright law and RCW 42.56.240(1)'s exception for materials essential to effective law enforcement.

2

On August 4, 2010, Vedder requested "a copy of any and all Seattle police officer's log sheets that correspond to any and all in-car video/audio records which have been tagged for retention by officers. This request is for such records dating from January 1, 2005 to the present." CP at 96.[1] On August 10, 2010, SPD's public record's officer, Sheila Friend Gray, responded that no relevant records existed.

The next day, Vedder requested "a list of any and all digital in-car video/audio recordings that have been tagged for retention by Seattle Police Officers from January 1, 2005 to the present. This list should include, but not be limited to, the officer's name, badge number, date, time and location when the video was tagged for retention and any other notation that accompanied the retention tag." CP at 98. On August 18, SPD denied the request on the grounds that "SPD is unable to query the system in the way you have requested. We can search by individual officer name, date, and time only. We cannot generate mass retention reports due to system limitations. Thus we do not have any responsive records." CP at 99.

On September 1, 2010, Vedder requested "copies of any and all digital, in-car video/audio recordings from the Seattle Police Department that have been tagged for retention by anyone from January 2007 to the present. The

---

[1] Vedder's declaration in support of KOMO's motion for summary judgment states that the request was submitted on August 4, 2010, as does Judge Rogers' order on cross motions for summary judgment. CP at 75, 535. The request was sent to SPD by e-mail late afternoon on August 3, 2010. CP at 95-96.

recordings should also include, but not be limited to, corresponding identifying information such as the date, time, location, and officer(s) connected to each unique recording." CP at 110. SPD contacted COBAN for help with this request. COBAN told SPD that such a list could be generated by running a computer script that COBAN was willing to provide for free, but coding the program to enable mass copying of the videos "will take some real programming" and would cost at least $1,500. CP at 239. SPD denied Vedder's third request on October 1, 2010, telling her, "'SPD is unable to query the system to generate a retention report that would provide a list of the retained videos.' Without this capability we are unable to respond to your request. Therefore we have no documents responsive to your request." CP at 254. After Vedder pressed the matter, SPD's attorney told her that the privacy act prevented release of the videos that were less than three years old.

Meanwhile, in February 2011, Eric Rachner requested "a copy of the full and complete database of all Coban D[igital] V[ideo] M[anagment] S[ystem] (DVMS)] activity logs in electronic form." CP at 40. He suggested since "Coban DVMS system's database runs on Microsoft SQL [(structured query language)] server, . . . it should be convenient to provide the logs, in electronic form, in their original Microsoft SQL Server format. The responsive records will include all rows of all columns of all tables related to the logging of video-related activity within the Coban DVMS." *Id.* After working closely with

4

Rachner, SPD began to provide the records in June. That summer, Rachner showed Vedder what he had received from SPD. According to Vedder, "I was amazed because the COBAN DVMS database provided to Mr. Rachner was exactly the sort of list of videos in electronic format that I had requested on August 11, 2010." CP at 81.

On September 19, 2011, KOMO sued SPD under the PRA for failing to timely produce records in response to Vedder's August 4, August 11, and September 1, 2010 requests, among other things. The next day the SPD gave Vedder a copy of materials it had produced for Rachner. Early in 2012, both parties moved for summary judgment. Judge Rogers found that SPD properly denied Vedder's request for police officer's log sheets and for the videos themselves. However, he found SPD had improperly rejected Vedder's request for the list of videos. The court initially levied a "$25.00 a day fine from the day Mr. Rachner received his first batch of COBAN files to the day Ms. Vedder received her COBAN files," plus fees and costs. CP at 540.[2]

We granted direct review. SPD is supported on review by the Washington State Association of Municipal Attorneys and the Washington Association of Sheriffs and Police Chiefs. KOMO is supported on review by the Washington Association of Criminal Defense Lawyers, the Washington

---

[2] Later, Judge Rogers clarified the penalty would accrue from the date the request was denied, not the date the materials were provided to Rachner. CP at 840-41.

Defender Association and the Defender Association, and the News Media

Entities and Washington Coalition for Open Government.

ANALYSIS

"The PRA mandates broad public disclosure." *Sargent v. Seattle Police Dep't*, 179 Wn.2d 376, 385, 314 P.3d 1093 (2013) (citing RCW 42.56.030); *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). It declares that "[t]he people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know." RCW 42.56.030. The PRA is "liberally construed and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected. In the event of conflict between the provisions of this chapter and any other act, the provisions of this chapter shall govern." *Id.* To that end, State and local agencies are required to disclose their records upon request, unless the record falls within an exception. *Gendler v. Batiste*, 174 Wn.2d 244, 251, 274 P.3d 346 (2012) (citing RCW 42.56.070(1)). The agency refusing to release records bears the burden of showing secrecy is lawful. *Sargent*, 179 Wn.2d at 385-86 (citing *Newman v. King County*, 133 Wn.2d 565, 571, 947 P.2d 712 (1997)). The PRA does not, however, require agencies to "'create or produce a record that is nonexistent.'"

*Gendler*, 174 Wn.2d at 252 (quoting *Sperr v. City of Spokane*, 123 Wn. App. 132, 136-37, 96 P.3d 1012 (2004)).

Agencies must make a sincere and adequate search for records. RCW 42.56.100; *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 720, 723, 261 P.3d 119 (2011). When an agency denies a public records request on the grounds that no responsive records exist, its response should show at least some evidence that it sincerely attempted to be helpful. *See, e.g., Neighborhood Alliance*, 172 Wn.2d at 722.

Our review of both the agency action and the court opinions below is de novo. *Gendler*, 174 Wn.2d at 251 (citing RCW 42.56.550(3)).

## 1. "Officer's Log Sheets"

Vedder requested "a copy of any and all Seattle police officer's log sheets that correspond to any and all in-car video/audio records which have been tagged for retention by officers. This request is for such records dating from January 1, 2005 to the present." CP at 96. The department responded that it had no relevant records. Judge Rogers found this did not violate the PRA. We agree.

Records requestors are not required to use the exact name of the record, but requests must be for identifiable records or class of records. WASH. STATE BAR ASS'N, PUBLIC RECORDS ACT DESKBOOK: WASHINGTON'S PUBLIC DISCLOSURE AND OPEN PUBLIC MEETINGS LAWS § 4.1(1)-(2) (2006 ed. &

2010 Supp.). The record establishes that "log sheets" specifically referred to paper forms that had not been used since 2002 and that these forms had been destroyed in 2004. Among other things, David Strom, senior warehouser of archival records for the SPD, testified that "log sheets" were "paper forms that officers filled out during their patrols. The 'log sheets' contained areas in which officers entered information regarding calls dispatched via radio, location, clearance code, notes, mileage and vehicle condition." CP at 399. Friend Gray looked for responsive records, was told definitively that "officer's log sheets" referred to a specific class of documents that no longer existed, and communicated her finding to Vedder. We find SPD's response complied with the PRA and affirm Judge Rogers' denial of this claim.

### 2. "LIST OF ALL RETAINED VIDEOS"

We turn now to Vedder's request for "a list of any and all digital in-car video/audio recordings that have been tagged for retention by Seattle Police Officers from January 1, 2005[, including] officer's name, badge number, date, time and location when the video was tagged for retention and any other notation that accompanied the retention tag." CP at 98. Judge Rogers found SPD violated the PRA when it told Vedder it had no responsive records. We agree.

SPD contends that Vedder was asking it to create a new record. This is clearly true to some extent; producing a document that would correlate *all* of

the information Vedder requested would have required mining data from two distinct systems and creating a new document. This is more than the PRA requires. *Citizens for Fair Share v. Dep't of Corrections*, 117 Wn. App. 411, 435, 72 P.3d 206 (2003) (citing *Smith v. Okanogan County*, 100 Wn. App. 7, 13-14, 994 P.2d 857 (2000)). However, as SPD's later response to Rachner demonstrated, it did have the capacity to produce a partially responsive record at the time it denied her request. It should have done so.

We recognize that neither the PRA itself nor our case law have clearly defined the difference between creation and production of public records, likely because this question did not arise before the widespread use of electronically stored data. Given the way public records are now stored (and, in many cases, initially generated), there will not always be a simple dichotomy between producing an existing record and creating a new one. But "public record" is broadly defined and includes "existing data compilations from which information may be obtained" "regardless of physical form or characteristics." RCW 42.56.010(4), (3). This broad definition includes electronic information in a database. *Id.*; *see also* WAC 44-14-04001. Merely because information is in a database designed for a different purpose does not exempt it from disclosure. Nor does it necessarily make the production of information a creation of a record.

Whether a particular public records request asks an agency to produce or create a record will likely often turn on the specific facts of the case and thus may not always be resolved at summary judgment. But for SPD's response to Rachner's request, this might well have been such a case. However, the uncontroverted evidence presented showed that a partially responsive response could have been produced at the time of the original denial. The failure to do so violated the PRA.

In the alternative, SPD argues that Vedder was requesting metadata and that while metadata is subject to the PRA, it must be specifically requested. Br. of Resp't at 33 (citing *O'Neill v. City of Shoreline*, 170 Wn.2d 138, 151-52, 240 P.3d 1149 (2010)). In *O'Neill*, we defined "metadata" as ""'data about data' or hidden information about electronic documents created by software programs." 170 Wn.2d at 143 (quoting Jembaa Cole, *When Invisible Electronic Ink Leaves Red Faces: Tactical, Legal and Ethical Consequences of the Failure to Remove Metadata*, 1 SHIDLER J.L. COM. & TECH. ¶ 7 (Feb. 2, 2005)). But Vedder was not seeking to peer beneath some text in an electronic database. She was not requesting metadata in any meaningful sense.

We find the rest of SPD's arguments unavailing. We hold that SPD violated the PRA when it incorrectly told Vedder it had no responsive records and affirm.

10

### 3. THE VIDEOS AND THE PRIVACY ACT

We turn now to Vedder's request for "copies of any and all digital, in-car video/audio recordings from the Seattle Police Department that have been tagged for retention by anyone from January 2007 to the present." CP at 110. After consulting with COBAN, SPD denied this request based on the grounds that it was "'unable to query the system to generate a report that would provide a list of retained videos.' Without this capability we are unable to respond to your request." CP at 254. But SPD had the capability to produce the list, so to the extent that its ability to produce the videos was contingent on its ability to produce the list, its initial response violated the PRA.

SPD also argues it is barred from releasing the videos by RCW 9.73.090(1)(c) of the privacy act. Under the PRA, "other statutes" may exempt or prohibit disclosure of certain records or information. *See Ameriquest Mortg. Co. v. Office of Attorney Gen.*, 170 Wn.2d 418, 440, 241 P.3d 1245 (2010) (quoting RCW 42.56.070(1)). All exceptions, including "other statute" exceptions, are construed narrowly. *Hearst*, 90 Wn.2d at 138-39. Generally, Washington's privacy act requires all parties to a private communication to consent to any recording. RCW 9.73.030. However, some recordings made by police are exempted from disclosure whether or not they record private conservations. Relevantly:

The provisions of RCW 9.73.030 through 9.73.080[3] shall not apply to police . . . in the following instances:

. . . .

(c) Sound recordings that correspond to video images recorded by video cameras mounted in law enforcement vehicles. . . .

No sound or video recording made under this subsection (1)(c) may be duplicated and made available to the public by a law enforcement agency subject to this section until final disposition of any criminal or civil litigation which arises from the event or events which were recorded.

RCW 9.73.090(1)(c). SPD argues that this statute functions as an "other statute" exception to the PRA. We agree in part, but given the general rule that exemptions are to be interpreted narrowly, RCW 42.56.030, we find this exemption is limited to cases where the videos relate to actual, pending litigation.[4]

The legislature added RCW 9.73.090(1)(c) in 2000. LAWS OF 2000, ch. 195, § 2. It stated that its intent was "to provide a very limited exception to the restrictions on disclosure of intercepted communications." LAWS OF 2000, ch. 195, § 1. Prior to that time, RCW 9.73.090 had authorized certain law enforcement and emergency recordings and restricted their use to "valid police or court activities." LAWS OF 2000, ch. 195, § 2. This amendment and the

---

[3] These provisions make intercepting, recording, or divulging private communications unlawful, RCW 9.73.030; establish grounds for a an ex parte court order authorizing interception, RCW 9.73.040; make unlawfully intercepted communications generally inadmissible in court, RCW 9.73.050; create a civil action for damages, RCW 9.73.060; exempt certain common carriers and 911 calls, RCW 9.73.070; and make violation of the act a gross misdemeanor, RCW 9.73.080.

[4] We note that RCW 9.73.090(1)(c) is not a complete bar to release of videos pertaining to ongoing litigation. It does not bar release of videos to all parties involved in that litigation and may not be a bar to release pursuant to a court order.

statement of legislative intent strongly suggest that the legislature intended to provide greater guidance on the use of these authorized recordings. It does not suggest the legislature intended to create a broad categorical exception to the PRA. We note that neither the statute nor even the bill reports mention the PRA or its predecessor. *See, e.g.*, H.B. REP. on H.B. 2876, 59th Leg., Reg. Sess. (Wash. 2006); H.B. REP. on H.B. 2903, 56th Leg., Reg. Sess. (Wash. 2000); RCW 42.56.050, .240. Indeed, exempting recordings from disclosure "until final disposition of any criminal or civil litigation which arises from the event," RCW 9.73.090(1)(c), would be a strange way to protect privacy. Privacy does not evaporate when litigation ends.

Of course, we turn to extrinsic evidence of legislative intent only when the plain language of the statute does not answer the question. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). In determining the plain meaning of a statute, we consider "all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id.* at 11. In this case, the statute as a whole suggests the legislative goal was neither to instill categorical delay nor protect personal privacy. Instead, the statute as a whole provides a limited exception to the rules against recording and the rules requiring disclosure to protect the integrity of law enforcement investigations and court proceedings. In authorizing "[s]ound recordings that correspond to video images recorded

[without all parties' consent] by video cameras mounted in law enforcement vehicles," RCW 9.73.090(1)(c), our legislature built on an exception to the privacy act that had for decades permitted recording of emergency calls and interviews of persons in custody. LAWS OF 1970, 1st Ex. Sess., ch. 48; LAWS OF 2000, ch. 195. For decades the privacy act has admonished that these "recordings shall only be used for valid police or court activities." LAWS OF 1970, 1st Ex. Sess., ch. 48, §1(2)(d) (codified at RCW 9.73.090(1)(b)(iv)).

Context suggests that the legislature's intent in providing that "[n]o sound or video recording made under this subsection (1)(c) may be duplicated and made available to the public by a law enforcement agency subject to this section until final disposition of any criminal or civil litigation which arises from the event or events which were recorded" is to give more guidance to agencies attempting to limit their use of these recordings to "valid police or court activities," RCW 9.73.090(1)(b)(iv). So long as "police or court activities" are ongoing, RCW 9.73.090(1)(c) restricts disclosure—most likely to protect those very "police or court activities" recited by the statute. *Accord Sargent*, 179 Wn.2d at 395. Neither the statutory text nor the legislative history suggests that categorical delay was legislative purpose. Delay was simply the means to an end—likely, to avoid tainting pending litigation.

KOMO contends that RCW 9.73.090(1)(c) is not an "other statute" exception to the PRA because it does not provide an alternative method of

obtaining public records. Br. of Appellant at 34 (citing *Deer v. Dep't of Soc. & Health Serv.*, 122 Wn. App. 84, 93 P.3d 195 (2004); *In re Dependency of K.B.*, 150 Wn. App. 912, 210 P.3d 330 (2009)). But while it was true that in both *Deer* and *K.B.* there was an alternative statutory procedure to obtain records, neither case held that was a necessary factor.[5]

We hold that RCW 9.73.090(1)(c) is a limited exception to immediate disclosure under the PRA, but it is one that applies only where there is actual, pending litigation. We reverse and remand for further proceedings on this claim as well.[6]

---

[5] KOMO also contends that RCW 9.73.090(1)(c) does not qualify as an "other statute exception" because such other statutes "must exempt or prohibit disclosure of specific public records in their entirety." Br. of Appellant at 30 (citing *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 262, 884 P.2d 592 (1994)) (*PAWS*). This is based on a widespread, but mistaken, reading of that passage in *PAWS*. In that passage, we considered the University of Washington's contention that several other statutes exempted unfunded grant proposals from disclosure *in their entirety*, rather than merely allowed their redaction to protect specific information. *PAWS*, 125 Wn.2d at 261-62. We articulated a test to determine when that was so. *Id.* That test is not helpful for determining whether a specific statute creates *any* exception under the PRA but only for determining whether it exempts a record in its entirety. Notably, *PAWS* itself did not apply that test to determine whether the Uniform Trade Secrets Act, chapter 19.108 RCW, or an antiharassment statute, RCW 4.24.580, applied, but simply looked to their plain language. 125 Wn.2d at 262-63.

[6] KOMO also argues that SPD violated the PRA by not providing a privilege log on the videos it did not disclose. Reply Br. of Appellant at 9 (citing RCW 42.56.210(3)). KOMO raised this in its complaint and summary judgment motion but did not assign error to the trial court's failure to reach it or otherwise address the issue in its opening brief. Given that, we decline to reach it. For similar reasons, we decline to reach whether SPD showed undue favoritism towards Rachner.

CONCLUSION

We hold that SPD complied with the PRA when it declined Vedder's request for officer log sheets. We hold that SPD did not comply with the PRA when it failed to produce a list of retained videos. We hold that RCW 9.73.090(1)(c) may exempt specific videos from public disclosure during the pendency of litigation but does not create a blanket exemption for any video that might be the subject of litigation. KOMO is entitled to attorney fees on the claims it prevailed upon. We remand to the trial court for further proceedings consistent with this opinion.

González, J.

WE CONCUR:

No. 87271-6

GORDON McCLOUD, J. (concurring)—I agree with the majority's resolution of this case. In particular, I agree that RCW 9.73.090(1)(c) cannot be read to bar the release of the police dashboard camera ("dash-cam") videos at issue here. I write separately to emphasize that the majority's analysis of how the Public Records Act (PRA), chapter 42.56 RCW, might apply if the conversations at issue here were private is unnecessary, because those conversations were not private at all.

This court has clearly held that conversations between police officers and the drivers they stop are not private for purposes of the privacy act, chapter 9.73 RCW. *Lewis v. Dep't of Licensing*, 157 Wn.2d 446, 460, 139 P.3d 1078 (2006). So has the Court of Appeals. *State v. Flora*, 68 Wn. App. 802, 806, 845 P.2d 1355 (1992) ("The State urges us to adopt the view that public officers performing an official function on a public thoroughfare in the presence of a third party and within the sight and hearing of passersby

1

enjoy a privacy interest which they may assert under the statute. We reject that view as wholly without merit.").

For this reason, RCW 9.73.090(1)(c) cannot be characterized as a privacy protection at all. Hence, it is not an "other statute" designed to protect privacy that trumps the PRA's disclosure mandate. Instead, RCW 9.73.090(1)(c) must be read to bar the "law enforcement agency" from making a *unilateral* "agency" determination to release such recordings before litigation based on the subject of these recordings is final. RCW 9.73.090(1)(c). The law enforcement agency, however, has a duty to make a lawful, nonunilateral decision about disclosure. To comply with both its disclosure requirement and its RCW 9.73.090(1)(c) limitation, the law enforcement agency need only get advice from outside that agency—e.g., from the city attorney, the prosecuting attorney, or the attorney general— before making a decision to disclose.

## ANALYSIS

I.   RCW 9.73.090(1)(c) Does Not Make Conversations Between Law Enforcement Officers and the Drivers They Stop Private

As discussed above, "this court and the Court of Appeals have repeatedly held that conversations with police officers are not private." *Lewis*, 157 Wn.2d at 460 (collecting cases).

If the subject of the dash-cam video is not private for purposes of the privacy act, then it is hard to believe that the legislature limited the reproduction and distribution of such videos (via RCW 9.73.090(1)(c)) to protect privacy. Moreover, as the majority points out, the fact that that statute allows law enforcement officers to eventually distribute the recording to the public also undermines the claim that RCW 9.73.090(1)(c) was enacted to protect anyone's privacy. *See* majority at 13 ("Privacy does not evaporate when litigation ends."). Finally, as this court has made clear, public records from a public agency that are available under court rules regarding discovery (including dash-cam videos, *see* Rules of Criminal Procedure (CrR) 4.7) are not exempt from disclosure under the PRA. *O'Connor v. Dep't of Soc. & Health Servs.*, 143 Wn.2d 895, 910, 25 P.3d 426 (2001); *id.* at 913 (Chambers, J., concurring). This also undermines the notion that RCW 9.73.090(1)(c) was designed as a privacy exemption.

The only natural reading of RCW 9.73.090(1)(c)—which is a separate paragraph tucked into a statute otherwise devoted to the different topic of *permitting* recordings—is that it is there to protect the right to a fair trial. (The City agrees. Br. of Resp't at 43-44 ("[Police dashboard camera] recordings play a significant evidentiary role in civil and criminal litigation,

and the Legislature recognized the impact that disclosure of recordings to the public could have if they were released before the subject of the recordings had an opportunity to fully adjudicate any criminal charges or civil claims related to the events that were recorded" (citing Clerk's Papers at 487-88)).

Broad distribution of discovery of any sort prior to litigation can pose problems for the litigant, particularly for the criminal defendant, and the legislature is certainly entitled to adopt measures to try to protect the jury pool from taint. RCW 9.73.090(1)(c) seems like such a measure. It is directed to the "law enforcement agency subject to this section," and it bars that "law enforcement agency"—but no one else—from certain dissemination. RCW 9.73.090(1)(c). It bars that agency's unilateral, unsupervised distribution of police recordings before the trial in which the recordings might become evidence (subject to "final disposition"), and it bars that "law enforcement agency" from "commercial" distribution at any time. It makes sense that the legislature would do this to protect fair trials. *Id.*

II.   RCW 9.73.090(1)(c) Does Not Create an "Exemption" from Disclosure

The City, however, argues—and the majority partially agrees—that RCW 9.73.090(1)(c) creates a statutory "exemption" from disclosure, per

4

the language of RCW 42.56.070(1), trumping the PRA's disclosure mandate. Majority at 12.

But the City doesn't really treat RCW 9.73.090(1)(c) as a true *exemption* from disclosure; "exempt" material is material that can never be disclosed. Instead, dash-cam videos are routinely released to individuals outside the "law enforcement agency." RCW 9.73.090(1)(c). They are available to aid prosecutorial decisionmaking (which occurs outside the "law enforcement agency"). *Id.* They are available to criminal defense counsel and their agents (who work outside the "law enforcement agency"). *Id.* They are even available for admission into evidence in court. And despite the fact that RCW 9.73.090(1)(c) says that these recordings can't be made "available to the public" by the "law enforcement agency," our courtrooms are, of course, open to the public and the press. All that reproduction and disclosure, including disclosure to the public at trial, occurs well before "final disposition of any criminal or civil litigation which arises from the event . . . recorded." *Id.* And it probably also occurs long before the three year time limit adopted by the agency[1] (but not by the legislature) expires.[2]

---

[1] I mention the three-year time limit because it shows that even the agency adopting that limit acknowledges that RCW 9.73.100(1)(c) permits distribution to the public at some point. I do not mention the three-year time limit to endorse it as lawful; the media amici have the better argument that "[d]etermining the scope of

Is all that distribution of dash-cam videos to prosecutors, defense counsel, juries, and public courtrooms unlawful or does it violate RCW 9.73.090(1)(c)? No one contends that this disclosure is unlawful, but why not? Why are dash-cam videos subject to disclosure in open court if RCW 9.73.090(1)(c) bars their public dissemination?

The answer is that RCW 9.73.090(1)(c) does *not* bar all public dissemination of dash-cam videos. Instead, the statute, by its plain language, applies *only* to the "law enforcement agency subject to this section." RCW 9.73.090(1)(c). It does not bar prosecutors from using them in open court—

---

PRA exemptions is the purview of the courts, not the agency holding the records." Br. of Amici Curiae News Media Entities et al. at 5 (citing *O'Neill v. City of Shoreline*, 170 Wn.2d 138, 149, 240 P.3d 1149 (2010); *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 130, 580 P.2d 246 (1978)).

[2] The City asserts (in its brief responding to the Washington Association of Criminal Defense Lawyers (WACDL)) that RCW 9.73.090(1)(c) is just like many other statutes that completely bar distribution of photos to the public even though the events captured were as public as the events captured by dash-cam videos. A review of the language of the statutes the City cites, though, shows that they use completely different language. They say that the videos and photos taken at tolls and similar places are completely private, not at all open to "the public," and that they cannot ever be distributed to the public except for the listed purposes. *See* Answer to Amicus Curiae WACDL at 12 ("RCW 9.73.090(1)(c) is just one of several statutes restricting or *prohibiting* dissemination of law-enforcement videos and images. The Legislature authorizes photo toll systems but prohibits *any* public dissemination of the images. RCW 46.63.160(6)(c); RCW 47.56.795(2)(b); RCW 47.46.105(2)(b). Likewise, the statute authorizing traffic safety cameras at stoplights, railroad crossings, and school speed zones does not permit *any* public dissemination of the images. RCW 46.63.170(1)(g). These statutes are based on the nature of the recording rather than the place where it is recorded.").

6

prosecutors are not the "law enforcement agency subject to this statute." *Id.* It does not bar criminal defense lawyers from using them in open court—these lawyers are not the "law enforcement agency" either. *Id.* It does not bar judges from admitting them into evidence in open court or from entering an order to disclose them—judges are obviously not "law enforcement agenc[ies]." *Id.* And it certainly does not bar courts from adopting and enforcing rules compelling disclosure of recordings by "video cameras mounted in law enforcement vehicles." *Id.*; *see, e.g.*, CrR 4.7(a)-(e) (listing discoverable materials); Rules of Evidence (ER) 402 (relevant evidence admissible); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (due process clause requires disclosure of any evidence favorable to the accused).

That means that RCW 9.73.090(1)(c) is not an "other statute which *exempts* or *prohibits* disclosure of specific information or records," creating a categorical "exempt[ion]" from disclosure, at all. RCW 42.56.070(1). It is, instead, a statute about who gets to decide whether to release dash-cam videos before "final disposition." RCW 9.73.090(1)(c). It bars law enforcement agencies from making that decision unilaterally.

This interpretation of RCW 9.73.090(1)(c) is consistent with our prior case law, which holds that RCW 9.73.090 creates special rules applicable solely to police.[3] We have held that police must strictly observe those rules, which require officers to notify drivers and arrested persons that they are being recorded *"even though the conversations involved clearly were not private." Lewis*, 157 Wn.2d at 465-66 (emphasis added).

III. Since RCW 42.56.070 Mandates Disclosure of Dash-Cam Videos of Law Enforcement Encounters with the Public and RCW 9.73.090(1)(c) Regulates Who Can Make the Disclosure Decision, the Law Enforcement Agency Must Turn to Counsel from Outside That Agency

If the duty to release dash-cam recordings (RCW 42.56.070) conflicted with the bar against law enforcement agencies making a decision to release these recordings, then the duty to release would prevail. RCW 42.56.030 ("In the event of conflict between the provisions of this chapter and any other act, the provisions of this chapter shall govern.").

But we have a duty to harmonize statutes, if possible. *State v. Fagalde*, 85 Wn.2d 730, 736-37, 539 P.2d 86 (1975) (citing *Publishers Forest Prods. Co. v. State*, 81 Wn.2d 814, 505 P.2d 453 (1973)). The two

---

[3] *See Lewis*, 157 Wn.2d at 464-67 ("the legislature enacted the provisions in . . . RCW 9.73.090(1)[(c)] . . . so that police officers would comply with those provisions"); *State v. Cunningham*, 93 Wn.2d 823, 829, 613 P.2d 1139 (1980) (interpreting former RCW 9.73.090(2) (1977), *recodified as* RCW 9.73.090(1)(b), which is "specifically aimed at the specialized activity of police").

statutes at issue here can be harmonized if the "law enforcement agency" makes its decision based on advice of its counsel from outside that agency, rather than unilaterally. RCW 9.73.090(1)(c). Such a requirement is in keeping with current practices; police departments and individual officers routinely consult counsel such as the local city attorney.[4] The outside-agency legal advisor would not be bound by RCW 9.73.090(1)(c)'s procedural limits (though it would be bound to consider other exemptions). And, if the disclosure request ends up in court, the court is not bound by RCW 9.73.090(1)(c)'s limit on "law enforcement agenc[ies]," either. *Id.*

There will certainly be cases—and this could be one—in which a personal privacy interest could justify withholding dash-cam videos from the public. The PRA exempts from production "specific investigative records" where nondisclosure "is essential . . . for the protection of any person's right

---

[4] *See In re Estate of Hansen*, 81 Wn. App. 270, 279-80, 914 P.2d 127 (1996) (noting that police department frequently obtained prior approval from Kent City Attorney, even though such approval was not required, before pursuing seizures warrants); *Fann v. Smith*, 62 Wn. App. 239, 241, 814 P.2d 214 (1991) (describing advisory memo from Seattle City Attorney to Police Relief and Pension Fund Trustees); Seattle City Attorney, http://www.seattle.gov/law/precinct_liaisons/ (last visited Apr. 8, 2014) (describing Seattle City Attorney's "Precinct Liaison Program," whose responsibilities include "[p]roviding real-time proactive legal advice for officers in each precinct"). This type of outside consultation is statutorily required for other agencies, as well. *See* RCW 36.27.020(2) (duty of prosecuting attorney to advise "all county and precinct officers"); RCW 43.10.030(4) (duty of Attorney General to "[c]onsult with and advise the several prosecuting attorneys in matters relating to their duties").

9

to privacy." RCW 42.56.240(1). But this is not a categorical exemption. As with the exemption recently discussed in *Sargent v. Seattle Police Department*, this exemption requires the agency to justify nondisclosure on a case-by-case basis. 179 Wn.2d 376, 394, 314 P.3d 1093 (2013) ("when an agency withholds internal investigation information citing the effective law enforcement exemption, the burden will rest with the agency to prove that specific portions of the internal file are essential to effective law enforcement").

There could be other situations in which nondisclosure would be considered necessary to protect a defendant's fair trial right. *See Seattle Times Co. v. Serko*, 170 Wn.2d 581, 595-96, 243 P.3d 919 (2010) (listing factors for courts to consider when determining whether to compel nondisclosure to protect defendant's fair trial right). But that is not a categorical exemption, either. *Id.* at 596 ("Application of the standard should be done as to each record requested, with the trial court conducting an in camera review.").

## CONCLUSION

I therefore concur in the majority's conclusion that RCW 9.73.090(1)(c) does not create a blanket exemption from disclosure. I would

add only that the trial court erred in interpreting RCW 9.73.090(1)(c) as an "other statute" that categorically exempts recordings from chapter 42.56 RCW's disclosure requirement.

Gordon McCloud, J.

No. 87271-6

FAIRHURST, J. (concurring in part/dissenting in part)—I agree with the majority that the trial court correctly concluded that the Seattle Police Department (SPD) did not violate the Public Records Act (PRA), chapter 42.56 RCW, by stating that it had no responsive records to Tracy Vedder's request for "'police officer's log sheets.'" Majority at 7 (quoting Clerk's Papers (CP) at 96). I also agree with the majority that the trial court correctly concluded SPD violated the PRA by stating that it had no responsive records to Vedder's request for "'a list of any and all digital in-car video/audio recordings.'" *Id.* at 8 (quoting CP at 98).

I disagree, however, with the majority's conclusion that SPD violated the PRA by withholding the dashboard camera recordings requested by Vedder. The PRA requires state and local agencies to disclose public records upon request. An exemption to this requirement is a record that falls within an "other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). Under Washington's privacy act, chapter 9.73 RCW, police dashboard video recordings are not available to the public "until final disposition of any

1

criminal or civil litigation which arises from the event or events which were recorded." RCW 9.73.090(1)(c). The majority finds that RCW 9.73.090(1)(c) is an other statute but interprets the prohibition found in RCW 9.73.090(1)(c) as "limited to cases where the videos relate to actual, pending litigation." Majority at 12. While I agree that this provision creates an exemption to the PRA, I disagree with this limitation and rewriting of the statute. I would affirm the trial court on all grounds.

The PRA is a "strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). The PRA requires all state and local agencies to "make available for public inspection and copying all public records, unless the record falls within the specific exemptions of [the PRA] or other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). That is to say, RCW 42.56.070(1) "incorporates into the [PRA] other statutes which exempt or prohibit disclosure of specific information or records" and that supplement, or do not conflict with, the PRA. *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 261-62, 884 P.2d 592 (1994) (citing former RCW 42.17.260(1) (1992), *recodified as* RCW 42.56.070, LAWS OF 2005, ch. 274, § 103).

RCW 9.73.090(1)(c) specifically prohibits disclosure of video recordings to "the public" and prohibits disclosure to the public "until final disposition of any

criminal or civil litigation."[1] *See* WAC 44-14-06002(1) (distinguishing "exemption"

from "prohibit[ion]" on the grounds that an agency has the discretion to disclose

exempt public records, but an agency has no discretion to disclose records that are

confidential or prohibited from disclosure). RCW 9.73.090(1)(c) does not conflict

with the PRA and prohibits disclosure of specific public records in their entirety.

Thus, we agree with the majority that RCW 9.73.090(1)(c) is an other statute that

operates as an exception to the PRA, prohibiting disclosure of in car law enforcement

video recordings.

However, we disagree with the majority at the scope of the exemption. The

majority limits the prohibition to "cases where the videos relate to actual, pending

litigation." Majority at 12. The majority imposes this limitation citing the

proposition that an exemption or disclosure prohibition found in a supplemental

statute should be narrowly interpreted to maintain the PRA's goal of free and open

examination of public records. *Sargent v. Seattle Police Dep't*, 179 Wn.2d 376, 386-

87, 314 P.3d 1093 (2013). While we agree that a court should interpret other statute

exemptions narrowly, the court must still interpret the other statute in good faith and

---

[1]While RCW 9.73.090(1)(c) prohibits disclosure to the public, it does not prohibit disclosure of police dashboard video camera recordings to "all parties involved in . . . litigation [relating to the substance of the recording]" or disclosure "pursuant to a court order." Majority at 12 n.4. I would add that if criminal charges are brought against the subjects of such videos, police are required to make such videos available to the subject's counsel under RCW 9.73.100.

may not impose an improperly narrow interpretation simply to reach a desired result. The majority improperly interprets the exemption too narrowly, essentially rewriting the statute in a way that is contrary to legislative intent and the statutory language itself.

"The goal of statutory interpretation is to discern and implement the legislature's intent." *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007) (citing *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). "In interpreting a statute, this court looks first to its plain language." *Id.* "If the plain language of the statute is unambiguous, then this court's inquiry is at an end." *Id.* We need not go beyond the plain language in this case to see the majority's limitation of the prohibition to "actual, pending litigation" is unduly narrow. Majority at 12.

The language of RCW 9.73.090(1)(c) prohibits disclosing the video recordings to the public until "final disposition of any criminal or civil litigation." "Final disposition" could mean entry of final judgment by a trial court or the exhaustion of appellate remedies. *Id.* Litigation might also be final when the possibility of litigation is foreclosed by a statute of limitations or other procedural mechanism. Although "final disposition" can be "reasonably interpreted in more than one way," it is not ambiguous "simply because different interpretations are conceivable." *State v. Watson*, 146 Wn.2d 947, 955, 51 P.3d 66 (2002) (citing *State v. Keller*, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001)).

4

The meaning of "any" is more clear. The word "any" has been given broad and inclusive connotations. *State v. Sutherby*, 165 Wn.2d 870, 880-81, 204 P.3d 916 (2009) (citing *Rosenoff v. Cross*, 95 Wash. 525, 527, 164 P. 236 (1917)); *State ex rel. Evans v. Bhd. of Friends,* 41 Wn.2d 133, 145, 247 P.2d 787 (1952) (the state constitution's prohibition on legislative authority to authorize any lottery or grant any divorce was unambiguously phrased in the broadest sense). The word is not limited by specific reference to a point in time. *Rosenoff,* 95 Wash. at 528 ("The words 'theretofore' and 'any' are broad and inclusive as to time and subject-matter. They negat[e] any intention to make only the violation of existing law a disqualification."). The meaning of the phrase "any order" has been held to be "'so plain as to admit of no argument as to the[] meaning.'" *State ex rel. Tacoma E. R.R. v. Pub. Serv. Comm'n*, 102 Wash. 589, 591, 173 P. 626 (1918) (internal quotation marks omitted) (quoting *State ex rel. Great N. Ry. v. Pub. Serv. Comm'n,* 76 Wash. 625, 627, 137 P.132 (1913) (citing *State ex rel. R.R. Comm'n v. Or. R.R. & Nav. Co.,* 68 Wash. 160, 123 P. 3 (1912))). In *State ex rel. Tacoma Eastern Railroad,* we emphasized that "any" must mean "all" because if it meant anything less, the legislature would have said as much. 102 Wash. at 591-92 ("[W]e are constrained to hold that the legislature, in using the words 'any order,' meant all orders, unless they had specifically excepted therefrom certain orders or class of orders in the foregoing statutes."). This case law demonstrates that there is a uniform, consistent, and thus

5

plain meaning for the widely used term "any." So we reaffirm Washington precedent and interpret "'any' to mean 'every' or 'all.'" *Sutherby*, 165 Wn.2d at 881 (internal quotation marks omitted) (quoting *State v. Smith*, 117 Wn.2d 263, 271 & n.8, 814 P.2d 652 (1991)); *State v. Westling*, 145 Wn.2d 607, 611, 40 P.3d 669 (2002); *Smith*, 117 Wn.2d at 271 ("Washington courts have repeatedly construed the word 'any' to mean 'every' and 'all.'").

Although the "final disposition" language can be reasonably interpreted in more than one way, none of those ways equate "any" to "actual" and "pending" litigation. Furthermore, the stated purpose of RCW 9.73.090(1)(c) is to prohibit the disclosure of police dashboard video recordings. Requiring law enforcement to publicly disclose dashboard video recordings upon request—except when there is actual, pending litigation—is directly in contradiction to the purpose and language of the statute, i.e., to prohibit public disclosure until final disposition of any criminal or civil litigation. Under the majority's theory, one need only ask for the recordings the day before filing the suit when there was no actual or pending litigation, which would obliterate the purpose of the statute. This court must enforce statutes "in accordance with [their] plain meaning," and the plain meaning does not limit disclosure only to cases with filed lawsuits. *Armendariz*, 160 Wn.2d at 110.

Washington's privacy act aims to protect citizens from having their private conversations recorded without their consent. *See* RCW 9.73.030. However, the

legislature carved out some exceptions to this rule, including allowing police officers to record interactions with citizens with an in car video camera. RCW 9.73.090. In the same provision where it created the exception to the privacy act, the legislature included language preventing such videos from public disclosure. The plain interpretation of this language in the context of the privacy act is that the legislature created the exception to retain some of the privacy rights of the citizen who was videotaped by the police. The majority insists that the real legislative goal was to protect the integrity of law enforcement investigations and court proceedings but makes this inference from looking at the historical development of the provision. Majority at 13-14. When the plain reading of a statute is clear, inferences and historical trends have no place. *See Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-11, 43 P.3d 4 (2002). An intent to exclude these videos from disclosure to retain the privacy of the citizens is clear from the text of the present statutory scheme, and the inquiry should end there.

The trial court and KOMO expressed concern about SPD's policy of destroying dashboard video recordings after three years—the same length of time as the statute of limitations for civil tort claims. It is conceivable that under this policy, SPD could destroy a recording before the recording would be subject to disclosure under RCW 9.73.090(1)(c). This hypothetical situation is not enough, however, to make RCW 9.73.090(1)(c) ambiguous. *See Watson*, 146 Wn.2d at 955 (The courts

7

"are not 'obliged to discern any ambiguity by imagining a variety of alternative interpretations.'" (internal quotation marks omitted) (quoting *State v. Keller*, 143 Wn.2d 267, 276-77, 19 P.3d 1030 (2001))). Moreover, KOMO's concerns are unfounded because, under RCW 42.56.100, an agency is prohibited from destroying records scheduled for destruction if the agency receives a public record request "at a time when such record exists." If such a request is made, the agency "may not destroy or erase the record until the request is resolved." *Id.*; *see also O'Neill v. City of Shoreline*, 170 Wn.2d 138, 149, 240 P.3d 1149 (2010) ("[T]he PRA does not allow agencies to destroy records that are subject to a pending records request."). Nothing prevents KOMO from making a public records request and from eventually obtaining dashboard video camera recordings. But KOMO, like other members of the public, must adhere to the delayed disclosure requirements of RCW 9.73.090(1)(c).

RCW 9.73.090 is an other statute that operates as an exemption to the PRA. The plain language of this statute instructs that in car video recordings should not be released to the public until final disposition of any criminal or civil litigation. The SPD retains any video that might be the subject of litigation for three years, and if no litigation has been filed by that time, the video may be destroyed. The legislature has determined that three years is sufficient time either for litigation to be commenced or for the SPD to be sure none will be filed regarding that video. Since

8

the statute plainly requires any litigation regarding an in car video to be final before any public disclosure, this three year time period is a logical application that ensures compliance with the statute.

## CONCLUSION

RCW 9.73.090(1)(c) is an other statute that exempts or prohibits public disclosure of specific information. RCW 9.73.090(1)(c) is not in conflict with the PRA and specifically prohibits public disclosure of police dashboard video camera recordings in their entirety until final disposition of any criminal or civil litigation. The majority's overly narrow interpretation of RCW 9.73.090(1)(c) is contrary to the legislature's intent to prohibit public disclosure of police dashboard video camera recordings until final disposition of any criminal or civil litigation, which is clear from the plain language of the statute. Although "final disposition" has a couple of reasonable interpretations, no interpretation supports concluding that it means "actual, pending litigation." Majority at 12. I would affirm the trial court's conclusion that SPD did not violate the PRA by withholding the video recordings requested by Vedder.

Fairhurst, J.

Owens, J.

Wiggins, J.

Madsen, C. J.