# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MATTHEW G. SILVA,

               Appellant,

        v.

KING COUNTY, a municipal
corporation,

               Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 75338-0-I

UNPUBLISHED OPINION

FILED: October 2, 2017

2017 OCT -2 AM 10:46

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

DWYER, J. — Matthew Silva appeals from the summary judgment dismissal of his Public Records Act[1] (PRA) claim against King County. The superior court erred, he contends, because only two of the three King County departments to which he contemporaneously submitted the same request provided him the King County record he sought. He also claims that King County withheld additional records responsive to his request. But King County answers that no additional responsive records exist and there is no evidence to the contrary. Silva further contends that the trial court erred by denying his motions

---

[1] Ch. 42.56 RCW.

for a change of venue, to strike King County's declarations, and for a continuance pursuant to CR 56(f). Finding no error, we affirm.

I

On May 6, 2014, Matthew Silva e-mailed a public records request to three King County employees: Sandy Courtway, an investigator in the Prosecuting Attorney's Office (PAO), Andrea Williams, the public records officer for the Department of Adult and Juvenile Detention (DAJD), and Anne Noris, the public records officer for the King County Council.

The e-mail was addressed "Dear Ms. Courtway" and read, in pertinent part:

> In order to alleviate any confusion, I am hereby requesting (again) any and all records of King County's adoption of a standard under RCW 70.48.071 [the County and City Jails Act]. This includes any records that King County claims to have altered its original adoption of WAC Title 289 in Motion 7089.[2]

The next day, Silva clarified that his request was directed at the King County Council and the DAJD, rather than at Courtway and the PAO.[3]

Noris searched the King County Council's database for correctional facility standards and found an electronic copy of Motion 7089, a motion passed by the council in 1988. She looked for any records regarding alteration of those standards and determined that the council had not changed the county's

---

[2] Motion 7089 was passed by the King County Council in 1988 as mandated by RCW 70.48.071, which required local governments owning or operating adult correctional facilities to adopt standards for the operation of those facilities.

[3] Silva's clarifying e-mail stated, "This request was also intended to be submitted directly to Ms. Norris [sic] and Ms. Williams. They should be the right people . . . ." As will be discussed below, notwithstanding Silva's clarification, Amy Eiden, legal counsel for the PAO, also conducted a search for records responsive to Silva's request.

correctional facility standards since adopting Motion 7089. She also determined that any legislative history regarding the passage of Motion 7089 in 1988 had been transferred from the council's records database to the King County archives.

On May 12, 2014, Noris replied to Silva's e-mail. In her e-mail response, Noris included an electronic copy of Motion 7089 and explained that any additional records relevant to Motion 7089 were located at the King County archives and were available for viewing by appointment. Noris concluded by informing Silva that she considered his public records request closed. The King County archives was never contacted by Silva regarding his public records request.

Williams searched the DAJD director's office for records relating to correctional facility standards and also contacted a King County records officer regarding legislative records pertaining to correctional facility standards. Williams' search uncovered no records relating to correctional facility standards enacted subsequent to Motion 7089.

On May 13, the day after Noris responded to Silva's e-mail with an electronic copy of Motion 7089, Williams became aware of Noris's response and requested and received a copy of her correspondence with Silva. That same day, Williams responded to Silva's request, indicating that she was continuing to look for records responsive to his request and would update him at the end of May. In her subsequent correspondence with Silva, Williams did not send Silva

an additional copy of Motion 7089 or inform him that no other responsive records existed.[4]

Amy Eiden, senior deputy prosecuting attorney for the PAO, also corresponded with Silva regarding his public records request. Eiden knew that the council had not enacted correctional facility standards other than those set forth in Motion 7089. Accordingly, in October 2014, Eiden sent an e-mail to Silva containing a second electronic copy of Motion 7089. Eiden also included, as a courtesy, a copy of the King County Adult Detention Operational Master Plan adopted by Ordinance 10022. However, she indicated that Ordinance 10022 and the Operational Master Plan were not responsive to his records request.[5]

In July 2015, Silva sued King County in Snohomish County Superior Court alleging violations of the PRA.

Three months later, Silva served King County with several interrogatories and requests for production. Counsel for King County responded to Silva's discovery requests and included a complete record of Silva's correspondence with King County regarding his records request. Silva then informed King County that he had objections to its discovery responses. As a result, the parties

---

[4] On May 30, Williams e-mailed Silva, explaining that she was continuing to search for records responsive to his request. She indicated that she would contact him again on June 13. On June 20, Williams e-mailed Silva and completed her response to an unrelated public records request to the DAJD by Silva from April 2014. However, Williams' e-mail did not discuss Silva's public records request for King County's correctional facility standards.

[5] The King County Adult Detention Operational Master Plan recognized, in pertinent part, that its operating standards were guided by several legal standards, including "King County Standards," detailing that

King County adopted the above WAC and CSB requirements, without change, via Council Motion 7089 on 2/16/88. This motion stipulated that King County Correctional Facilities should also meet federal and state constitutional requirements relating to health, safety, and welfare of inmates and staff, and specific state and federal requirements.

conducted two discovery conferences and King County submitted a second set of discovery responses. Thereafter, Silva did not move to compel discovery or alert King County to any additional discovery objections.

In January 2016, King County moved for summary judgment, supporting its motion with declarations from Noris, Williams, and Eiden.

On February 9, three days before the scheduled summary judgment hearing, Silva responded to King County's motion with a document entitled, "Objections to Defendant's Summary Judgment Motion." Therein, Silva moved to strike King County's summary judgment motion, alleging that King County had submitted declarations that failed to indicate that the declarants had sworn, under penalty of perjury, as to the veracity of their attestations.[6] Silva's response did not contest the factual averments set forth in the declarations filed by King County.

King County replied to Silva's response that same day, resubmitting its declarations with the under "penalty of perjury" wording and leaving its declarations substantively unchanged.

Silva did not otherwise respond to King County's motion for summary judgment.

On February 12, the parties appeared before the Honorable George N. Bowden in Snohomish County Superior Court for the scheduled summary judgment hearing. At the beginning of the hearing, Silva requested that Judge

---

[6] Silva's response to King County's summary judgment motion also raised additional legal arguments not here at issue.

Bowden recuse himself. Judge Bowden complied. The hearing was rescheduled for the following week.

Also on February 12, Silva submitted to the court additional procedural motions, including a motion for a change of venue and a motion for continuance pursuant to CR 56(f).

On February 19, the various motions were heard by the Honorable Richard T. Okrent. Judge Okrent denied Silva's motions. He granted King County's motion for summary judgment, dismissing Silva's claim.

Silva now appeals.

II

Silva asserts that the trial court erred by granting summary judgment to King County. This is so, he claims, because King County violated the PRA in responding to his records request. We disagree.

We review the trial court's decision on summary judgment de novo. Estate of Haselwood v. Bremerton Ice Arena, Inc., 166 Wn.2d 489, 497, 210 P.3d 308 (2009) (citing Biggers v. City of Bainbridge Island, 162 Wn.2d 683, 693, 169 P.3d 14 (2007)). Summary judgment is appropriate only if the supporting materials, viewed in the light most favorable to the nonmoving party, demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005).

> A party seeking to avoid summary judgment cannot simply rest upon the allegations of his pleadings, he must affirmatively present the factual evidence upon which he relies. Leland v. Frogge, 71

Wn.2d 197, 200-01, 427 P.2d 724 (1967); Lindsay Credit Corp. v. Skarperud, 33 Wn. App. 766, 770, 657 P.2d 804 (1983). CR 56(e). Mackey v. Graham, 99 Wn.2d 572, 576, 663 P.2d 490 (1983).

"A public records case may be decided based on affidavits alone." Forbes v. City of Gold Bar, 171 Wn. App. 857, 867, 288 P.3d 384 (2012) (citing O'Neill v. City of Shoreline, 170 Wn.2d 138, 153-54, 240 P.3d 1149 (2010)). "Purely speculative claims about the existence and discoverability of other documents will not overcome an agency affidavit, which is accorded a presumption of good faith." Forbes, 171 Wn. App. at 867.

Here, Silva's public records request was for two types of records: records relating to correctional facility standards adopted by King County pursuant to RCW 70.48.071 and records relating to alterations by King County of its correctional facility standards. Each is discussed in turn.

A

Silva first contends that King County violated the PRA because he did not receive copies of King County's correctional facility standards from each of the three King County divisions to which he contemporaneously submitted a public records request. Silva is wrong.

Nothing in the PRA requires that separate divisions within an agency repeatedly disclose identical copies of the agency's public record. Rather, "[t]he stated purpose of the Public Records Act is nothing less than the preservation of the most central tenets of representative government, namely, the sovereignty of the people and the accountability to the people of public officials and institutions." Progressive Animal Welfare Soc'y v. Univ. of Wash. (PAWS), 125 Wn.2d 243,

251, 884 P.2d 592 (1994) (citing former RCW 42.17.251 (2004), *recodified as* RCW 42.56.030). To promote such accountability, the act requires that agencies, "upon request for identifiable public records, make them promptly available," RCW 42.56.080(2), and provide "fullest assistance to inquirers." RCW 42.56.100. "'The provisions of the act are to be construed liberally to promote the complete disclosure of public records.'" Faulkner v. Dep't of Corr., 183 Wn. App. 93, 100, 332 P.3d 1136 (2014) (quoting Bonamy v. City of Seattle, 92 Wn. App. 403, 408, 960 P.2d 447 (1998)). We interpret and apply the PRA so as "to enforce the law's overall purpose." Rental Hous. Ass'n of Puget Sound v. City of Des Moines, 165 Wn.2d 525, 536, 199 P.3d 393 (2009).

The purpose of the PRA is to put the requestor in possession of the record. The purpose is not to put the requestor in possession of multiple copies of the same record. No public interest is furthered by requiring the expenditure of public funds to put the requestor in possession of multiple copies of the same public record. As we have previously held, "duplication of effort is outside the agency's obligation of 'fullest assistance' under the PRA." Mitchell v. Dep't of Corr., 164 Wn. App. 597, 607, 277 P.3d 670 (2011). Expending public resources to put the requestor in possession of multiple copies of the same record does not fulfill the "overall purpose" of the act. Rental Housing Ass'n, 165 Wn.2d at 536.

Once an agency has disclosed a record in response to a public records request, replying to the same request with additional, identical copies of the requested record does nothing to promote the purpose of the PRA, which is to preserve the "accountability to the people of public officials and institutions."

PAWS, 125 Wn.2d at 251. After an agency discloses a public record in response to a request, repeated disclosure of the same record by different employees within the same local government in response to the same request is duplicative. The PRA requires no such waste of public resources.

Here, King County complied with the PRA. The first type of record requested by Silva was records relating to any King County correctional facility standards adopted pursuant to RCW 70.48.071. Motion 7089 was a record responsive to this request. Noris, a King County public records officer, timely sent Silva a copy of Motion 7089, thus fulfilling his request. Later, Eiden also sent him a copy of the same record. All additional efforts by King County employees to put Silva in possession of another, identical copy of the same record would be nothing but duplicative and wasteful. The PRA imposes no such duty.[7]

There was no error.

B

Silva next contends that King County violated the PRA because it unlawfully withheld records relating to alterations of King County's correctional facility standards, including King County Ordinance 10022. We disagree.

Again, the PRA provides that "agencies shall, upon request for identifiable public records, make them promptly available to any person." RCW 42.56.080(2).

---

[7] Silva also relies upon provisions of the King County Code, adopted pursuant to the PRA, to support his claim. His reliance is unavailing. Nothing in these provisions require King County's divisions to separately respond with the same record in response to the same request.

Notably, however, "an agency has no duty under the PRA to create or produce a record that does not exist at the time of a public record request." Zink v. City of Mesa, 162 Wn. App. 688, 718, 256 P.3d 384 (2011) (citing Sperr v. City of Spokane, 123 Wn. App. 132, 136-37, 96 P.3d 1012 (2004)); accord Fisher Broad.-Seattle TV LLC v. City of Seattle, 180 Wn.2d 515, 522, 326 P.3d 688 (2014). "If the requested record does not exist, there is no agency action for the court to review under the PRA." Faulkner, 183 Wn. App. at 100 (citing Sperr, 123 Wn. App. at 137). Furthermore, "[t]he adequacy of a search is judged by a standard of reasonableness." Neigh. Alliance of Spokane County v. Spokane County, 172 Wn.2d 702, 720, 261 P.3d 119 (2011). "'The reasonableness of an agency's search turns on 'the likelihood that it will yield the sought-after information, the existence of readily available alternatives, and the burden of employing those alternatives.'" Forbes, 171 Wn. App. at 866 (internal quotation marks omitted) (quoting Trentadue v. Fed. Bureau of Investigation, 572 F.3d 794, 797-98 (10th Cir. 2009)).

King County did not violate the PRA. The sole evidence at summary judgment was that it was known that Ordinance 10022 was not responsive to Silva's public records request. It was further known that King County had never altered its correctional facility standards and, therefore, no records of such action could possibly exist.[8] Thus, Silva's request for records relating to an alteration of

---

[8] Although Silva, in argument, insists otherwise, he presented no evidence at summary judgment in support of his argument. He needed to present evidence, not just argument, to overcome the County's averments and create an issue of fact on the question. In "seeking to avoid summary judgment," Silva "cannot simply rest upon the allegations of his pleadings, he must affirmatively present the factual evidence upon which he relies." Mackey, 99 Wn.2d at 576 (citing CR 56(e); Leland, 71 Wn.2d at 200-01; Lindsay, 33 Wn. App. at 770)).

King County's correctional facility standards was a request for records that did not exist. It was reasonable for King County employees not to search for records that could not exist.

The PRA does not impose a duty on the employees of governmental bodies to search for—or create—records that are known not to exist.

The trial court did not err by granting King County's motion for summary judgment.

III

Silva next claims that the trial court erred with regard to its rulings on several of his procedural motions.

A

Silva first contends that the trial court erred by denying his motion for a change of venue. We disagree.

We review a trial court's ruling on a motion for a change of venue for abuse of discretion. Hickey v. City of Bellingham, 90 Wn. App. 711, 719, 953 P.2d 822 (1998) (citing Baker v. Hilton, 64 Wn.2d 964, 965, 395 P.2d 486 (1964)). RCW 4.12.030 reads, in pertinent part, "The court may, on motion, in the following cases, change the place of trial when it appears *by affidavit, or other satisfactory proof:* . . . (2) That there is reason to believe that an impartial trial cannot be had therein." (Emphasis added.)

The trial court did not abuse its discretion. Silva filed his complaint against King County in the Snohomish County Superior Court. Then, seven days before the summary judgment hearing, Silva moved for a change in venue, arguing that

he was unable to receive a fair trial in Snohomish County because of his involvement in an unrelated claim against another Snohomish County Superior Court judge. Silva did not submit an affidavit in support of this motion.

At the hearing, Judge Okrent acknowledged that he had reviewed and considered Silva's motion for a change of venue. After a brief exchange, Silva acknowledged that he had no basis to believe that Judge Okrent would not be fair in his case.

Silva failed to offer satisfactory proof to the trial court that an impartial trial on his claim could not be held in the Snohomish County Superior Court. The trial court did not abuse its discretion by denying Silva's motion for a change in venue.[9]

There was no error.

B

Silva next contends that the trial court erred by accepting the declarations submitted by King County in support of its motion for summary judgment. We disagree.

We review a trial court's ruling on a motion to strike for an abuse of discretion. Engstrom v. Goodman, 166 Wn. App. 905, 910, 271 P.3d 959 (2012) (citing King County Fire Prot. Dist. No. 16 v. Hous. Auth. of King County, 123 Wn.2d 819, 826, 872 P.2d 516 (1994)). "'Until a formal order granting or denying the motion for summary judgment is entered, a party may file affidavits to assist

---

[9] Silva argues that the trial court abused its discretion by indicating, in its written order, that he had *withdrawn* his motion for a change of venue. Notwithstanding this misstatement in the court's written order, at the hearing on Silva's motion, the trial court clearly considered and denied Silva's motion for a change of venue.

the court in determining the existence of an issue of material fact.'" Jobe v. Weyerhaeuser Co., 37 Wn. App. 718, 727, 684 P.2d 719 (1984) (quoting Cofer v. Pierce County, 8 Wn. App. 258, 261, 505 P.2d 476 (1973)). "[T]he trial court may accept affidavits anytime prior to issuing its final order on summary judgment." Brown v. Peoples Mortg. Co., 48 Wn. App. 554, 559, 739 P.2d 1188 (1987) (citing Felsman v. Kessler, 2 Wn. App. 493, 498, 468 P.2d 691 (1970)).

Silva fails to show that the trial court abused its discretion. King County timely filed its declarations. Silva had ample opportunity to review and respond to the attestations set forth therein. Silva did, in actuality, respond to King County's declarations, raising several procedural and evidentiary objections. In response, King County corrected the attestation portion of its declarations, leaving unchanged the declarations' substantive content. The trial court accepted King County's corrected declarations before it ruled on the motion for summary judgment.

The trial court did not abuse its discretion by accepting substantively unchanged declarations that attested to the truth of the assertions set forth therein before ruling on King County's motion for summary judgment.

There was no error.

C

Silva next contends that the trial court erred by denying his motion for a continuance pursuant to CR 56(f).

We review the trial court's denial of a CR 56(f) motion for an abuse of discretion. Coggle v. Snow, 56 Wn. App. 499, 504, 784 P.2d 554 (1990). Under

CR 56(f), if the nonmoving party demonstrates, by affidavit, why he or she cannot present evidence opposing summary judgment, the trial court "may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." The trial court may deny the motion for a continuance when "the requesting party does not offer a good reason for the delay in obtaining the desired evidence." Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989).

Here, Silva moved for continuance on February 12, the same day on which the summary judgment hearing was rescheduled for February 19. In his motion, Silva requested additional time to conduct further discovery as well as to depose several King County officials. The trial court denied his request, stating:

> Having reviewed this record, and noted that this motion is untimely, and noted that this case has been litigated for quite some time, the court makes a finding that Mr. Silva has done an excellent job in his pleadings, and his knowledge of the civil rules are excellent, I cannot find a reason why I would allow depositions at this point. So at this point I'm going to deny the request for the CR 56(f) request to continue as this matter has been well litigated, the pleadings have been made, the affidavits are correct, and I find that the interrogatories have already been answered.

The trial court did not abuse its discretion. Silva's motion for a continuance was brought late in the proceedings. Moreover, Silva failed to demonstrate, by affidavit, that he was unable to present material evidence at the summary judgment hearing. Furthermore, Silva failed to offer a good reason for seeking a continuance. In the months prior to King County's motion for summary judgment, Silva had requested and received responses to his discovery requests. His objections to King County's responses were addressed through two

discovery conferences and a second set of discovery responses by King County. He did not thereafter raise additional objections or move to compel additional discovery. The record in this matter amply supports the trial court's denial of Silva's motion for a continuance.

There was no error.[10]

Affirmed.

We concur:

---

[10] Silva also contends that the trial court erred by allowing King County to refuse to answer interrogatories under oath and by failing to impose sanctions on King County for its discovery responses. We disagree. The record reflects that King County's discovery responses complied with CR 26(g). There was no error.

Silva further argues that the trial court erred by denying his motion for reconsideration of its summary judgment ruling. Silva failed to properly assign error to or present authority and analysis regarding this claim in his appellate briefing. We thus do not consider it. RAP 10.3(a)(4), (6).